MILLER *v.* WRIGHT.

WILLIE L. MILLER, ADMINISTRATOR OF THE ESTATE OF JERRY DONALD MILLER, DEC'D., v. MARTHA HINSON WRIGHT AND RALPH MITCHELL HINSON.

(Filed 2 February, 1968.)

**1. Death § 3—**

Nonsuit is properly entered in an action for wrongful death when plaintiff's allegation that he was duly qualified and acting administrator of deceased is denied in the answer and plaintiff offers no evidence in support of his allegation.

**2. Automobiles §§ 69, 85—** **Evidence held insufficient to show that defendant motorist failed to keep proper lookout or that cyclist exercised due care.**

Plaintiff's evidence consisted in part of defendant's uncontradicted testimony on adverse examination to the effect that defendant's automobile was on the pavement on the inside lane of a four-lane highway when he struck the 24-year old intestate, that defendant's headlights were on low beam but that he could see at least 250 feet ahead, and that he did not see the deceased prior to the impact. The physical evidence showed that the front wheel of deceased's bicycle had been severely damaged, that damage to the rear wheel was negligible, that the bicycle had a reflector tape on the rear and no headlamp on the front, but the evidence failed to show whether the deceased was riding the bicycle or walking beside it. There was contradictory evidence as to whether defendant was passing another vehicle at the time of the collision. *Held:* The evidence is insufficient to show that defendant was negligent in proximately causing the collision or that the deceased was exercising due care for his safety at the time of the accident.

**3. Trial § 21—**
> Upon motion for judgment of nonsuit, discrepancies in plaintiff's evidence must be resolved in his favor, but plaintiff may not avail himself of both conflicting accounts simultaneously.

**4. Automobiles § 8—**
> A driver of a motor vehicle upon the highway owes a duty to all other persons using the highway to maintain a reasonable lookout in the direction of his travel.

**5. Automobiles § 13—**
> The function of a headlight is to produce a driving light sufficient, under normal atmospheric conditions, to enable the operator to see a person 200 feet ahead. G.S. 20-129, G.S. 20-131.

APPEAL by plaintiff from *Froneberger, J.,* at the 29 May 1967 Schedule "B" Regular Civil Session of MECKLENBURG.

This is an action for damages for wrongful death and for conscious suffering of the deceased. The plaintiff appeals from a judgment of nonsuit.

The plaintiff's evidence is ample to show, and it is not controverted, that on 31 October 1965, at approximately 6:20 p.m., the deceased, 24 years of age, was struck by an automobile driven by the defendant Hinson while the deceased was riding upon or walking beside his bicycle on U.S. Highway 74, just east of the Mecklenburg-Union County line, and thereby sustained severe injuries from which he died a few hours thereafter. It is further clear from the evidence, and undisputed, that at this point Highway 74 consists of two paved lanes for eastbound traffic and two paved lanes for westbound traffic, a grass covered strip approximately 30 feet wide lying between the east and westbound lanes. It was dark at the time the accident occurred. The scene of the accident is in a rural area and there were no lights other than those of vehicles on the highway. The highway is straight for a considerable distance on either side of the place where the accident occurred but is somewhat hilly.

The complaint alleges that the injury and death were proximately caused by Hinson's negligence in that: (a) He failed to keep a careful lookout; (b) he drove at an excessive speed; (c) he failed to keep the vehicle under control; and (d) after he saw, or should have seen, Jerry Miller in a perilous position he failed to turn his automobile from the inside eastbound lane to the outside eastbound lane. The complaint further alleges that Jerry Miller was on the grass dividing strip of the highway, near but not on the pavement of the eastbound traffic lane and Hinson was traveling east in the inside eastbound lane. The complaint also alleges that the defendant Wright was the registered owner of the vehicle and Hinson was driving it as her agent in the course of the agency.

The answer admits that the defendant Wright was the registered owner of the automobile but denies that Hinson was her agent. It denies all allegations of negligence on the part of Hinson and pleads contributory negligence by the deceased in that he failed to keep a proper lookout, failed to have any light upon the bicycle, failed to proceed along the righthand side of the highway and placed himself in the path of the automobile. The answer does not admit that the plaintiff is the duly appointed administrator of the estate of Jerry Miller, averring that the defendants are without knowledge or information as to that matter.

The complaint alleges that Jerry Miller, with his bicycle, was crossing the dividing strip preparatory to crossing the eastbound lanes of Highway 74 en route to his home, which was south of the highway and upon a road which intersected the highway 1,000 feet to the east of the point of collision. The answer alleges that Jerry Miller was riding the bicycle in a westerly direction upon the inside lane for eastbound traffic. There is no evidence whatever to support either allegation. There is no evidence to show whether Miller was riding the bicycle or was walking or standing beside it. There is no evidence to show where Miller and his bicycle were at the moment of impact except the testimony of the defendant Hinson, on adverse examination introduced in evidence by the plaintiff, that Hinson's automobile did not leave the pavement until after the impact and that, at the time of the impact, his left wheel was at least 12 inches from the interior edge of the pavement of the lanes for eastbound traffic.

The plaintiff's evidence with reference to how the accident happened consisted of the damaged bicycle, two photographs of which are contained in the record, the deposition of George McRorie and the adverse, pre-trial examination of the defendant Hinson. The plaintiff also introduced evidence as to the earnings of the deceased, this not being material to the present appeal.

The photographs of the bicycle disclose that it was severely damaged at the front, that the damage at the rear was negligible and that there was no light on the front.

McRorie testified to the following effect: At the time of the accident he was traveling eastward on Highway 74. His lights were burning. Just west of the above mentioned intersection McRorie was in the outside eastbound lane driving 50 or 55 miles per hour. Hinson passed McRorie just before reaching the intersection and continued on in the inside eastbound lane. McRorie then cut over into the inside eastbound lane behind Hinson and followed him at a distance of about 75 feet. Seeing the defendant's brake lights come on, McRorie went back into the outside lane for eastbound traffic. The

defendant then pulled over into the grass dividing strip and began to get out of his car. McRorie then stopped on the outside shoulder some ten feet behind the defendant's car. The defendant said, "I hit something or somebody." Both ran back up the road and found Jerry Miller lying in the grass dividing strip. McRorie ran to summon an ambulance. Upon his return, he observed a bicycle in a drain trench in the center of the grassy strip east of the place where Miller lay. When his brake lights came on, Hinson was in the inside lane for eastbound traffic. He then "went down the road just a few feet and then started to the left, pulling off."

Hinson's testimony on adverse examination was to the following effect: He was the sole owner of the automobile, the title having been registered in the name of his sister, Mrs. Wright, solely because he was then a minor. He did not live with his sister and she had no control over his use of the car. At the point of impact he was going slightly down hill. His speed was 55 miles per hour. For a substantial distance he had been following another vehicle in the outside lane for eastbound traffic at 50 miles per hour and cut over into the inside lane to pass it. As he drew abreast of the other vehicle he glanced at it just "a split second" to see if it was coming into his, the inside, lane. Prior to that, he had been looking straight ahead and had observed nothing in the road. Just as he turned his eyes back to the road ahead, while still abreast of the car he was passing, he felt a thump and his windshield was shattered. He immediately applied his brakes, not knowing what he had struck, and pulled over into the grass dividing strip and stopped. The car which he was in the act of passing continued on and did not stop. No other car then stopped and no one else went back with him. He immediately ran back and found Miller lying about 120 feet to the rear of his stopped automobile, the closest part of Miller's body being about 18 inches from the edge of the pavement. Other vehicles then approached, which he flagged down and asked for help. The bicycle was discovered just beyond the center line of the grass dividing strip and a bit east of where Miller lay. Hinson's lights were on the "low beam" as he was passing the other car. With his lights "on low beam" he could see 250 feet. He never did see Miller or know what he had struck until he ran back after the accident. Hinson's left headlight and left front fender were damaged and the windshield shattered. Hinson saw no light or reflector on the bicycle prior to the impact. After the accident he observed a small piece of reflecting adhesive tape on the back mudguard of the bicycle. At the time of the impact Hinson's left front tire was on the pavement, 12 to 18 inches from the inner edge. Before beginning to pass the other vehicle, he had

glanced in his rear view mirror to see that it was safe to pass. There were no vehicles following him.

*Welling & Miller for plaintiff appellant.*
*Kennedy, Covington, Lobdell & Hickman for defendant appellees.*

LAKE, J.  There is no evidence in the record to show that the plaintiff has been issued letters of administration upon the estate of Jerry Donald Miller. The allegation in the complaint that he is such administrator not being admitted in the answer, this is sufficient ground for affirmance of the judgment of nonsuit. *Kinlaw v. R. R.,* 269 N.C. 110, 152 S.E. 2d 329; *Graves v. Welborn,* 260 N.C. 688, 133 S.E. 2d 761; *Carr v. Lee,* 249 N.C. 712, 107 S.E. 2d 544.

The judgment of nonsuit must also be affirmed for the reason that the evidence of the plaintiff, considered in the light most favorable to him, does not show any negligent act or omission of the defendant Hinson which was the proximate cause of the injury and death of Jerry Donald Miller.

There is no evidence whatever to show where Jerry Miller was or what he was doing immediately prior to the impact. The adverse examination of Hinson, introduced in evidence by the plaintiff, and uncontradicted, is that at the moment of impact Hinson's automobile was on the pavement. It follows that the deceased, or part or all of his bicycle, or both, were on the pavement when struck. We can only conjecture as to whether he was riding the bicycle or walking or standing beside it, whether he was proceeding along the highway or attempting to cross it. The condition of the bicycle, introduced by the plaintiff, compels the conclusion that it was struck upon the front wheel either in a head-on collision (*i.e.,* while Miller was proceeding west upon the lane for eastbound traffic), or while Miller was crossing or preparing to cross the two lanes for eastbound travel from the grass dividing strip. In either event, any reflecting tape or other light-reflecting device upon the rear mudguard would not be visible to Hinson as he approached. There was no light on the front of the bicycle. There is no evidence to indicate that Hinson was driving at an excessive speed or that his vehicle left the paved surface prior to the impact.

There is an obvious conflict between the deposition of McRorie and the adverse examination of Hinson, both introduced in evidence by the plaintiff. According to McRorie's deposition, at the time Hinson's brake lights came on, which Hinson's testimony fixes as the moment of impact, the outside lane for eastbound travel was free of traffic and McRorie's car was in the inside lane for eastbound traffic following Hinson's. According to Hinson's testimony on ad-

verse examination, there was no car following him in the inside lane, and there was another vehicle abreast of his in the outside lane so that he could not have turned into that lane had he seen Miller. Upon a motion for judgment of nonsuit, discrepancies in the plaintiff's evidence must be resolved in his favor. *Coleman v. Colonial Stores, Inc.,* 259 N.C. 241, 130 S.E. 2d 338; *Bundy v. Powell,* 229 N.C. 707, 51 S.E. 2d 307. The plaintiff cannot, of course, have the benefit of both of the conflicting accounts simultaneously. In his brief, the plaintiff says, "The defendant, Hinson, was in the act of passing another eastbound vehicle which was proceeding in the outside curb lane." Thus, he adopts Hinson's version of what occurred and abandons his allegation in the complaint that Hinson could have turned his automobile into the outside lane for eastbound travel. If, however, we accept McRorie's account, it was not negligence for Hinson to be driving in the inner lane for eastbound traffic prior to the time when he saw, or should have seen, Miller on his bicycle therein or in the immediate vicinity thereof. G.S. 20-146(a)(4). The uncontradicted evidence is that Hinson never saw Miller or his bicycle prior to the impact. His car was obviously under control for he stopped within a few feet of the point of impact which took him by surprise. There is, therefore, no evidence to support any of the allegations of the complaint with reference to negligence on the part of Hinson unless the evidence is sufficient to support a finding that he did not maintain a proper lookout.

Upon the question of lookout, the only evidence is the testimony of Hinson on adverse examination, introduced in evidence by the plaintiff. A driver of a motor vehicle upon the highway owes a duty to all other persons using the highway to maintain a reasonable lookout in the direction of his travel. *Sugg v. Baker,* 261 N.C. 579, 135 S.E. 2d 565; *Clontz v. Krimminger,* 253 N.C. 252, 116 S.E. 2d 804. When one is driving at night the duty to maintain a reasonable lookout includes the duty to have adequate headlights burning upon the vehicle so that such lookout can be effective. 60 C.J.S., Motor Vehicles, § 286. Hinson testified that his headlights were burning "on low beam" but that, nevertheless, they enabled him to see 250 feet. This is uncontradicted. The adequacy of headlights upon a motor vehicle, in normal atmospheric conditions such as prevailed upon this occasion, is determined by G.S. 20-129 and G.S. 20-131. In *O'Berry v. Perry,* 266 N.C. 77, 145 S.E. 2d 321, we said, "The function of a front light or headlight, defined by G.S. 20-129 and G.S. 20-131, is to produce a driving light sufficient, under normal atmospheric conditions, to enable the operator *to see* a person 200 feet ahead." Thus, the plaintiff's evidence discloses no inadequacy of

Hinson's headlights on this occasion, even though they were on the depressed or low beam.

Hinson's testimony was that he was looking straight ahead and saw nothing in front of him and then, being in the act of passing another car, glanced for a "split second" at it to see that he had the necessary clearance for passing in safety. This was not negligence. If, at this point, we return to McRorie's version of the occurrence and assume there was no other car abreast of Hinson in the outside lane, the requirement of a reasonable lookout does not mean that a driver having looked in the direction of his travel and seen nothing in his path or its vicinity, may not cast his eyes for a "split second" to the side and then back upon the road. Thus, the plaintiff's evidence does not show a failure by Hinson to maintain a reasonable lookout in the direction of his travel.

Mere proof of a collision and resulting injury is not enough to survive a motion for judgment of nonsuit. The plaintiff's evidence must not leave the matter to speculation or conjecture but, when interpreted most favorably to him, must be sufficient to support a finding that the defendant was negligent, as alleged in the complaint, and that such negligence was the proximate cause of the injury. *Ashe v. Builders Co.*, 267 N.C. 384, 148 S.E. 2d 244; *Jackson v. Gin Co.*, 255 N.C. 194, 120 S.E. 2d 540. The plaintiff's evidence having failed to show negligence by Hinson as a proximate cause of the injury and death of Miller, the judgment of nonsuit was properly entered.

A further reason compelling the affirmance of the judgment below is that the plaintiff's evidence compels the conclusion that if Hinson was negligent, as alleged in the complaint, Jerry Miller was guilty of contributory negligence which bars the plaintiff's recovery. While the evidence does not disclose where he was immediately prior to the collision or whether he was riding the bicycle or walking or standing beside it, the plaintiff's evidence leads inescapably to one of these conclusions: (1) He was riding an unlighted bicycle westwardly in the lane for eastbound traffic; (2) he was attempting to cross the highway in the face of an oncoming motor vehicle so near that such attempt to cross its path made a collision inevitable; (3) he was walking or standing beside his bicycle upon, or with his bicycle upon, the pavement or standing with the front wheel of his bicycle upon the pavement and he continued so to do until the moment of impact, though he could have seen the oncoming automobile in time to move out of its path. In any of these alternatives, Miller failed to exercise reasonable care for his own safety and that failure was one of the proximate causes of his injury and death.

Affirmed.