CECIL D. JERNIGAN, JR. v. ATLANTIC COAST LINE RAILROAD COMPANY

No. 24

(Filed 14 May 1969)

1. **Evidence § 3— matters of common knowledge — beam of locomotive headlights**

It is a matter of common knowledge that a locomotive headlight casts an intense but narrow beam far ahead in order that the train crew may spot defects in the rails or obstructions on the roadbed.

2. **Railroads § 5— crossing accidents — duty of motorist**

The law casts upon the operator of a motor vehicle a continuing duty to look and listen before entering upon a railroad crossing.

**3. Negligence § 1— acts constituting negligence — sight and hearing**

Ordinarily, when a diligent use of one's senses of sight and hearing discloses danger in time to avoid it, failure to take the proper precaution constitutes negligence.

**4. Railroads § 6— crossing accidents — reliance on flagman and warning devices**

A plaintiff who knows of the railroad's custom to have a flagman at a crossing to direct traffic and to have the engine's whistle blowing and its bell ringing for a crossing has the right to place some reliance on the custom or usage, but plaintiff is not entitled to rely entirely thereon and omit the exercise of all ordinary care for his own safety.

**5. Negligence § 26— burden of proof**

In tort actions involving issues of negligence and contributory negligence, plaintiff has the burden of showing defendant's negligence.

**6. Negligence §§ 29, 35— non-suit — contributory negligence**

A motion to nonsuit should be sustained unless there is evidence before the jury from which it may, but not must, find each material fact necessary to make out a case of actionable negligence; even then, nonsuit is proper if plaintiff's own evidence so clearly establishes his contributory negligence as one of the proximate causes of his injury that no other reasonable inference may be drawn from that evidence.

**7. Appeal and Error § 59— review of nonsuit — discussion of evidence**

In passing on a judgment of nonsuit, the appellate court must examine all the evidence in the record; but if the nonsuit is reversed and the cause remanded for trial, the appellate court will ordinarily discuss only so much of the evidence as discloses the basis for decision.

**8. Railroads § 5— crossing accidents — contributory negligence**

In an action to recover for injuries received when plaintiff motorist collided in the nighttime with a train engine standing on a railroad crossing, plaintiff's evidence *is held* not to disclose contributory negligence as a matter of law where it shows that the street on which plaintiff approached the tracks was on a downgrade and that a trestle above the street obstructed plaintiff's view of the tracks until he was within seventy-two feet thereof, that the lights of the engine were not visible to plaintiff but the lights of a street beyond the tracks were, that plaintiff was familiar with the custom of the railroad to place a flagman at this crossing to warn of the presence of a train on the crossing, but that there was no flagman at the crossing when the accident occurred, and that plaintiff first saw the engine partially obstructing his lane of traffic when he was within eight to ten feet of the engine but was unable to avoid the collision.

ON certiorari to review the decision of the North Carolina Court of Appeals (3 N.C. App. 408) affirming judgment of involuntary nonsuit entered in the Superior Court of HALIFAX County at its February, 1968 Civil Session.

*Allsbrook, Benton, Knott, Allsbrook & Cranford by Richard B. Allsbrook, for the plaintiff.*

*Spruill, Trotter & Lane by Charles T. Lane, for the defendant.*

HIGGINS, J.

The plaintiff instituted this civil action to recover for personal injuries and property damage he sustained in a grade crossing collision between his automobile and the defendant's switch engine. The accident occurred about 1:20 on the morning of October 7, 1961 as the plaintiff was driving eastward on Third Street in the outskirts of Weldon.

Third Street, a link in U.S. Highway 158, is 36 feet wide. The surface is black asphalt divided into two lanes of equal width for vehicular traffic east and west. At the foot of a hill, three closely parallel yard tracks of the defendant cross Third Street at an angle of approximately 80 degrees. To the east of the crossing, and on the south side of the street, a service station, though closed, displayed a number of lights. At the intersection of Third Street and Washington Avenue, (more than a block east of the rail lines), an overhead traffic control light was in operation. Neither of these lights illuminated the crossing.

About 300 feet west of the yard tracks, Third Street begins its downward slope, described by one of the witnesses as 15 to 20 degrees. Seventy-two feet from the crossing, the main line of the railroad passes over Third Street on a trestle. A motorist driving eastward cannot see the crossing or the lights beyond until he has passed under the trestle.

The pleadings raise issues of negligence, contributory negligence, and damages. On the argument here the parties confined the discussion to the issue of contributory negligence. They have assumed, and properly so, that the plaintiff's evidence was sufficient to go to the jury on the issue of negligence.

The plaintiff's evidence disclosed substantially this situation and sequence of events: At approximately 1:00 on the morning of October 7, 1961, the plaintiff and his employee quit work on the plaintiff's cottage a short distance east of the point where Third Street crosses the yard tracks. As they drove west on Third Street, a flagman stopped the automobile at the crossing until switching operations there were completed. After about five minutes, the flagman gave an all clear signal. The plaintiff and his passenger, after crossing the yard tracks, proceeded west on Third Street for two miles

to a drive-in where the employee transferred to his own automobile. On the return home, the plaintiff approached the trestle driving 30 to 35 miles per hour. His view of the crossing and the street beyond had been cut off by the trestle and its abutments. He had reduced speed to 15 to 20 miles per hour as he approached the crossing. He could then see the lights at the service station and at the intersection of Washington Avenue. As he proceeded downgrade, however, his automobile lights, though in good working order, did not pick up any obstruction in the street until his vehicle leveled off at the end of the decline. He was then 8 to 12 feet from the third track when he discovered, for the first time, that his traffic lane was not clear.

Notwithstanding his efforts to avoid a collision, the left front of his automobile struck the bottom step to the rear platform of the stationary switch engine. The surface of the street was black asphalt. The defendant's engine was also black. The plaintiff did not see any lights on or about the engine. He did not discover that the rear platform protruded into and partially blocked his travel lane. The top of this platform was only about five feet above the level of the crossing. Hence, there is a permissible inference the plaintiff, on his approach, could see the light at the intersection over the platform, but due to the blend in the color of the engine and of the street surface, and to the steep decline of his approach, his automobile light beams were not sufficiently elevated to disclose the protruding platform until the automobile was at or near the level of the tracks. After discovery, it was then too late to avoid the collision.

[1] A front and a rear light near the top of the engine were on, though neither was visible to the plaintiff who approached from almost a right angle. It is a matter of common knowledge that a locomotive headlight casts an intense but narrow beam far ahead in order that the train crew may spot defects in the rails or obstructions on the roadbed. These lights were many feet above the tracks. Their beams were focused outside the range of the plaintiff's view as he approached from the west.

The plaintiff testified he had lived in the vicinity for 10 years. He had crossed the yard tracks 6 or 7 times per week, often at night. When switching operations interfered with travel on Third Street, a flagman was there with a lantern or flare to direct traffic. As the plaintiff approached the crossing from the east on his way to the drive-in, a switching movement blocked the crossing. The flagman present stopped the plaintiff until the street was clear. On the return journey 10 minutes later, the accident occurred. No one was present to direct traffic.

The defendant's engine was stationary on the track. Insofar as the plaintiff could see, it was unlighted and silent — no whistle — no bell. Its color approximated the color of the street surface. There is evidence that near the top of the engine there were reflector strips and spots which became visible if within the beam of approaching automobile lights. But the plaintiff's lights, due to the degree of his approach, were not sufficiently elevated to illuminate these reflectors. The plaintiff testified his lights neither reflected the markings nor gave him notice of the obstruction until, as he said, he was within 8-10-12 feet of the unlighted, stationary roadblock.

According to the measurements, the rear platform of the engine extended across the center line of Third Street into the plaintiff's travel lane a distance of 7 or 8 feet. The plaintiff testified his eyesight was good; his automobile was equipped with good lights and brakes; he was looking straight ahead, but was unable to see the obstruction until he was too close to avoid the accident. He was driving 15 miles per hour at the time he discovered his danger. There was no warning sound to disclose the presence of the engine and no flagman to direct traffic. The plaintiff introduced evidence of his serious personal injuries and extensive damage to his automobile.

The parties have discussed and cited many cases involving a wide variety of factual situations. While the rules of law are easily stated, nevertheless, because of factual differences, their proper application presents difficulty.

[2-4]   As a general rule, the law casts upon the operator of a motor vehicle a continuing duty to look and listen before entering upon a railroad crossing. *Johnson v. Railroad,* 255 N.C. 386, 121 S.E. 2d 580. Ordinarily, when a diligent use of one's senses of sight and hearing discloses danger in time to avoid it, failure to take the proper precaution constitutes negligence. *Parker v. Railroad,* 232 N.C. 472, 61 S.E. 2d 370. However, a plaintiff who knows of the railroad's custom to have a flagman at a crossing to direct traffic and to have the engine's whistle blowing and its bell ringing for a crossing has "the right to place some reliance on the custom or usage . . . However, this rule does not mean that plaintiff could rely entirely on a proper performance on the part of the defendant of its custom and usage there, and omit the exercise of all ordinary care on his part for his own safety, because it was his legal duty to take such precautions for his own safety, as an ordinarily prudent man would take under the same or similar circumstances." *Ramey v. Railroad,* 262 N.C. 230, 136 S.E. 2d 638.

The plaintiff's evidence and the inferences favorable to him which

it permits are sufficient to go to the jury on the issue of his contributory negligence. The cases cited by the defendant are distinguishable. For example, the cited case of *Owens v. Railroad,* 258 N.C. 92, 128 S.E. 2d 4, when properly interpreted, discloses the nonsuit judgments were sustained, not on the ground of contributory negligence, but because of failure of the plaintiff to prove defendant's negligence. Likewise, in *Morris v. Railroad,* 265 N.C. 537, 144 S.E. 2d 598, the nonsuit was granted because of failure to offer sufficient evidence to permit a finding of negligence.

**[5, 6]**      Generally, in tort actions involving issues of negligence and contributory negligence, the law casts upon the plaintiff the burden of showing the defendant's negligence. The court should sustain a motion to nonsuit unless there is evidence before the jury from which it may, but not must, find each material fact necessary to make out a case of actionable negligence. Even then, nonsuit is proper if the plaintiff's own evidence so clearly establishes his contributory negligence as one of the proximate causes of his injury that no other reasonable inference may be drawn from that evidence.

> "Under proper pleadings, evidence of actionable negligence takes the case to the jury unless contributory negligence appears as a matter of law. A party whose proof shows his adversary was guilty of actionable negligence is entitled to go to the jury unless he defeats his own cause by showing he was guilty of contributory negligence as a matter of law. With respect to the quantum of proof, there is no essential difference between negligence and contributory negligence. On the latter issue the parties reverse positions. In determining liability each party is charged with the duty of exercising such due care as the exigencies and circumstances of the occasion may require. If the evidence is conflicting on issues of negligence and contributory negligence, such are issues of fact and require jury determination. These issues may not be answered by the court as a matter of law." Southern Railway Co. v. Woltz, 264 N.C. 58.

> ". . . (A) motion for judgment of compulsory nonsuit upon the ground of contributory negligence should be allowed only when the plaintiff's evidence considered alone and taken in the light most favorable to him, together with inferences favorably to him which may be reasonably drawn therefrom so clearly establishes the defense of contributory negligence that no other conclusion may reasonably be drawn." *Atwood v. Holland,* 267 N.C. 722.

> "Nonsuit on the issue of contributory negligence should be de-

nied when the relevant facts are in dispute or · opposite inferences are permissible from plaintiff's proof." Strong's N.C. Index, 2d Negligence, § 35, p. 72, citing many cases.

[7] In passing on a judgment of nonsuit entered in the trial court, the appellate court must examine all the evidence in the record. However, if the nonsuit is reversed and the cause remanded for trial, the appellate court may, and perhaps should in the usual case, discuss only so much of the evidence as discloses the basis for decision. This is so in order that the jury, in finding the facts, may not be influenced by anything except the evidence produced at the trial and the court's charge.

[8] In this case the plaintiff's evidence does not disclose his contributory negligence as a matter of law. After full review, we conclude: (1) the compulsory nonsuit judgment was improvidently entered in the Superior Court; and (2) the decision of the Court of Appeals affirming the judgment was erroneous. We refrain from discussing or deciding any question except that the evidence was sufficient to go to the jury on the issues of negligence, contributory negligence, and damages. The jury must weigh the evidence and answer the issues according to its findings after both parties have been heard or have had opportunity to be heard.

The decision of the Court of Appeals is

Reversed.

BRANCH, J. did not participate in the decision of this case.