JOSEPH RAND VESTAL, Plaintiff,
v.
CAPITAL MARBLE CREATIONS, INC. and JESSICA THOMAS WOOD, Defendants.
No. COA08-739
Court of Appeals of North Carolina.
Filed February 3, 2009
This case not for publication
E. Gregory Stott, for Plaintiff-Appellant.
Cranfill Sumner & Hartzog LLP, by Jaye E. Bingham and Stephanie A. Gaston, for Defendant-Appellees.
BEASLEY, Judge.
Joseph Vestal (Plaintiff) appeals from the denial of his motion for a new trial, and the entry of our order taxing certain costs to Plaintiff. We affirm.
In July 2006 Plaintiff and Jessica Wood (Defendant; with Capital Marble Creations, collectively, Defendants) were involved in an automobile accident in Wake County, North Carolina. In September 2006 Plaintiff filed a lawsuit against Defendants, alleging that the accident was caused by Wood's negligence and seeking damages for personal injuries and property damage. The case was tried before a Wake County jury in January 2008. The evidence may be summarized in relevant part as follows: Plaintiff testified that on 28 July 2006 at about 5:45 a.m. he was driving north on S. Saunders St., towards downtown Raleigh. The northbound side of the road had three travel lanes and a turning lane. Plaintiff wanted to stop at a gas station on the southbound side of the street, near the intersection of S. Saunders and Ileagnes. He moved into the left turn lane at the corner of Ileagnes and S. Saunders. When the red light changed to a green arrow, Plaintiff made a U-turn into the center lane of southbound S. Saunders St. He put on his right turn signal, intending to move to the far right hand lane to enter the gas station, but before he could move from the center lane, Defendant's car struck him from behind. As a result of the collision, Plaintiff was injured and his car was damaged. Plaintiff testified further that when law enforcement officers arrived at the scene of the accident the "cop kept harassing about that [he] was drunk, driving down the wrong side of the road and that it was [his] fault." He "guessed" that he called his employer and his brother after the accident, but did not recall making the calls. When an ambulance arrived, he was taken to Wake Medical Center (WakeMed).
On cross-examination, Plaintiff conceded that WakeMed's medical records stated that Plaintiff told the triage nurse and emergency room physician that he had taken multiple doses of Xanax, a sedative, before the accident. Plaintiff testified that he told hospital personnel he had taken Zantac, not Xanax, and that he was"slurring words" after the accident. Plaintiff did not know why the accident occurred, and did not see Defendant's car before the collision. He admitted to a previous conviction of possession with intent to sell marijuana and cocaine.
Officer C.L. Roberts of the Raleigh Police Department testified that he was on duty during the early morning hours of 28 July 2006. He was dispatched to Ileagnes and S. Saunders shortly before 6:00 a.m. and spoke briefly with Plaintiff before calling an ambulance. He told the jury that "there's a turn signal at certain hours if you're making a left hand turn[.]"
Plaintiff also called John Thompson as a witness. Thompson testified that Plaintiff was his employee and had called him after the accident. When Thompson arrived at the scene, Plaintiff was "kind of a little disoriented" and "wasn't sure of what had just happened[.]"
Dr. Craig Frater, M.D., testified as an expert in emergency medicine. On 28 July 2006 he treated Plaintiff in the WakeMed emergency room. Dr. Frater testified on cross-examination that his medical records stated that Plaintiff "admits to taking benzodiazepines throughout the day yesterday. He states he took multiple Xanax tablets for his personal enjoyment." Dr. Frater told the jury that the effect of Xanax was "very similar to alcohol use." When Dr. Frater was asked on redirect examination whether Plaintiff might have said that he took Zantac rather than Xanax, he said this was "probably not" the case, noting that Plaintiff had separately told both him and the triage nurse that he had taken Xanax. The hospital ordered a urine drug abuse screen, but Plaintiff did not want to provide a urine sample, so it was not done. On re-cross-examination Dr. Frater testified that the emergency room report included in Plaintiff's "current medications" the entry "Xanax from friends."
Defendant Jessica Wood testified that she was part owner of Defendant Capital Marble Creations. Shortly before 6:00 a.m. on 28 July 2006, Wood was driving south on S. Saunders St., headed out of town to meet a customer near Sanford, North Carolina. Wood was focused on her driving, and was neither talking on a cell phone nor adjusting the radio. The traffic was light and visibility was generally good.
As Wood neared the intersection of S. Saunders and Ileagnes, she was driving in the far right hand lane. Her visibility was obstructed only by a white truck in the center lane, one lane to her left and about a half a car length ahead of her. She had a green light at the intersection, was driving the legal speed limit of 45 mph, and saw nothing at the intersection that would require her to slow down. Suddenly, the white truck swerved to the left and Plaintiff's vehicle appeared in front of her. Wood immediately "slammed" on the brakes but was unable to avoid hitting Plaintiff's car a "split second" later. After the collision, Wood got out of her car and called 911. She testified that Plaintiff seemed disoriented, his speech was slurred, and he asked her "[w]hat happened?" Following the presentation of evidence, the case was submitted to the jury. The first issue on the jury's issue sheet asked: "Was the Plaintiff, Joseph Rand Vestal, injured by the negligence of the Defendants?" The issue sheet directed the jury that if it answered this issue "No" it should not answer the other issues "for this will be your verdict." Accordingly, after the jury answered "No" to the threshold question of Defendants' negligence, it did not reach the other issues.
On 11 January 2008 the trial court entered judgment for Defendants. On 15 February 2008 the court entered an order taxing to Plaintiff an expert witness fee for the testimony of Dr. Frater. On 16 January 2008 Plaintiff filed a motion seeking a new trial, pursuant to N.C. Gen. Stat. § 1A-1, Rules 59 and 60. On 22 February 2008 the court entered an order denying Plaintiff's motion for a new trial. Plaintiff has appealed from the judgment entered against him, the order taxing the expert witness fee to him, and the denial of his motion for a new trial.

Standard of Review
Plaintiff appeals the denial of his motion for a new trial under N.C. Gen. Stat. § 1A-1, Rule 59(a)(7) (2007).
"Rule 59(a)(7) permits a new trial to be granted for `[i]nsufficiency of the evidence to justify the verdict.' The term `insufficiency of the evidence' means that the verdict is against the greater weight of the evidence." Strum v. Greenville Timberline, LLC, 186 N.C. App. 662, 667, 652 S.E.2d 307, 310 (2007) (quoting In Re Will of Buck, 350 N.C. 621, 624, 516 S.E.2d 858, 860(1999)). In ruling on a motion for a new trial, the trial court gives deference to the jury's findings on contested issues. "There is no question that `[i]t is the province of the jury to weigh the evidence and determine questions of fact.' Moreover, as the finder of fact, the jury is `entitled to draw its own conclusions about the credibility of the witnesses and the weight to accord the evidence.' The trial court must give the utmost consideration and deference to the jury's function as trier of fact before setting aside a decision of the jury." Horne v. Vassey, 157 N.C. App. 681, 687, 579 S.E.2d 924, 928 (2003) (quoting Coletrane v. Lamb, 42 N.C. App. 654, 657, 257 S.E.2d 445, 447 (1979), and Smith v. Price, 315 N.C. 523, 530-31, 340 S.E.2d 408, 413 (1986)).
The trial court's ruling on a motion for a new trial is reviewed for abuse of discretion. "Because `the trial court has directly observed the evidence as it was presented and the attendant circumstances, as well as the demeanor and characteristics of the witnesses,' a trial court's ruling on a motion for new trial is given great deference." Kummer v. Lowry, 165 N.C. App. 261, 263, 598 S.E.2d 223, 225 (2004) (quoting In re Will of Buck, 350 N.C. at 628, 516 S.E.2d at 863). "[T]he ruling of a judge on a motion for a new trial is in the sound discretion of the trial judge. In the absence of abuse of discretion, such ruling is not reversible on appeal." Investors Title Insurance Co. v. Herzig, 330 N.C. 681, 696, 413 S.E.2d 268, 276 (1992) (citations omitted). "An abuse of discretion occurs when the trial court's ruling `is so arbitrary that it could not have been the result of a reasoned decision.'" Chicora Country Club, Inc. v. Town of Erwin, 128 N.C. App. 101, 109, 493 S.E.2d 797, 802 (1997) (quoting White v. White, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985)).
North Carolina cases have held that when the jury's verdict is supported by competent evidence, it is not an abuse of discretion for the trial court to deny a motion for new trial under Rule 59(a)(7). See, e.g., Investors Title, 330 N.C. at 696, 413 S.E.2d at 276 (no abuse of discretion by trial court where appellant "fails to demonstrate how the abundance of evidence presented can be deemed insufficient to justify the verdict reached"); Strum, 186 N.C. App. at 667, 652 S.E.2d at 310 (where "competent evidence" supported the jury's findings the "trial court did not abuse its discretion in denying" motion for a new trial).
Plaintiff also appeals the trial court's entry of an order taxing him with the costs for Dr. Frater's testimony. N.C. Gen. Stat. § 6-20 (2007), states in relevant part that costs are allowed "in the discretion of the court" and "are subject to the limitations on assessable or recoverable costs set forth in G.S. 7A-305(d)[.]" N.C. Gen. Stat. § 7A-305(d)(11) (2007) authorizes taxing of costs for "[r]easonable and necessary fees of expert witnesses[.]" Accordingly, "expert witness fees could be awarded to the prevailing defendants in the discretion of the trial court under section 6-20. The appropriate standard of review is whether the trial court abused its discretion." Smith v. Cregan, 178 N.C. App. 519, 526, 632 S.E.2d 206, 210 (2006) (citing Cosentino v. Weeks, 160 N.C. App. 511, 516, 586 S.E.2d 787, 789-90 (2003)).

I.
Plaintiff argues first that the trial court erred by denying his motion for a new trial. Plaintiff contends it was an abuse of discretion for the trial court to deny his motion, on the grounds that the jury's verdict was contrary to the greater weight of the evidence. We disagree.
"The essential elements of any negligence claim are the existence of a legal duty or standard of care owed to the plaintiff by the defendant, breach of that duty, and a causal relationship between the breach of duty and certain actual injury or loss sustained by the plaintiff." Peace River Electric Cooperative v. Ward Transformer Co., 116 N.C. App. 493, 511, 449 S.E.2d 202, 214 (1994) (citation omitted). The "plaintiff must introduce evidence tending to establish that, `(1) defendant failed to exercise proper care in the performance of a duty owed to plaintiff; (2) the negligent breach of that duty was a proximate cause of plaintiff's injury; and (3) a person of ordinary prudence should have foreseen that plaintiff's injury was probable under the circumstances as they existed.'" Estate of Hendrickson v. Genesis Health Venture, Inc., 151 N.C. App. 139, 147, 565 S.E.2d 254, 259 (2002) (quoting Rose v. Steen Cleaning, Inc., 104 N.C. App. 539, 541, 410 S.E.2d 221, 222 (1991)).
"A driver of a motor vehicle upon the highway owes a duty to all other persons using the highway[.]" Miller v. Wright, 272 N.C. 666, 671, 158 S.E.2d 824, 828 (1968) (citations omitted). Plaintiff's complaint alleges that Defendant Wood breached her duty to drive safely. Plaintiff also alleged that Wood violated safety standards set out in N.C. Gen. Stat. § 20-140 and § 141 (2007), which "construed together, establish a duty to drive with caution and circumspection and to reduce speed if necessary to avoid a collision, irrespective of the lawful speed limit or the speed actually driven." State v. Stroud, 78 N.C. App. 599, 603, 337 S.E.2d 873, 876 (1985).
"Generally, in tort actions involving issues of negligence and contributory negligence, the law casts upon the plaintiff the burden of showing the defendant's negligence." Jernigan v. R.R. Co., 275 N.C. 277, 282, 167 S.E.2d 269, 272 (1969). By their verdict, the jury found that Plaintiff failed to meet his burden to introduce evidence of Defendants' negligence. As discussed above, if competent evidence supported the jury's verdict in this regard, then it was not an abuse of discretion for the trial court to deny Plaintiff's motion.
Plaintiff argues that "all the competent and credible evidence demonstrated that [Wood] was negligent[.]" He directs our attention to his own testimony that (1) when he turned left to make a U-turn onto southbound S. Saunders St., the traffic light was a green arrow; (2) he moved into the center lane of traffic heading south and signaled his intention to move to the right hand lane, but; (3) before he could switch lanes, Defendant hit him "squarely" from the rear. He also notes the officer's testimony that at certain times of the day there is a green arrow for left turns, and Defendant's testimony that, despite generally good visibility, she did not see Plaintiff's car until just before the collision.
Plaintiff asserts that his evidence established that Defendant failed to "maintain a proper lookout" or to keep her vehicle under proper control. However, contrary to Plaintiff's contention, other evidence conflicted with Plaintiff's evidence or permitted inferences in Defendants' favor. Jessica Wood testified that she had the green light at the intersection of S. Saunders St. and Ileagnes. This testimony would support an inference that Plaintiff did not have had a green arrow when he turned into the intersection. Wood also testified that she was in the far right lane, not the center lane; and that when Plaintiff appeared in the road ahead of her without warning, the collision was unavoidable. Officer Roberts testified that the intersection had a green arrow for left hand turns at "certain times" of day, but the jury reasonably could infer that 6:00 a.m. was not one of those times.
Moreover, the "credibility of the testimony and the propriety of drawing therefrom inferences which it will support [are] for the jury[.]" Robinette v. Wike, 265 N.C. 551, 553, 144 S.E.2d 594, 596 (1965). In the instant case, Plaintiff's credibility was impeached by his admission to a prior conviction for possession of illegal drugs, and by Dr. Frater's testimony that Plaintiff had told him and other hospital personnel that he took multiple doses of Xanax before the accident. Other evidence also suggested that Plaintiff may have been impaired at the time of the accident, including Dr. Frater's testimony that Xanax has an effect similar to that of alcohol; Plaintiff's testimony that his speech was slurred after the collision; and the testimony of Dr. Fraser, John Thompson, Officer Roberts, and Jessica Wood that Plaintiff seemed dazed and disoriented after the accident.
To present sufficient evidence of a defendant's negligent driving, "[m]ere proof of a collision and resulting injury is not enough to survive a motion for judgment of nonsuit." Miller, 272 N.C. at 672, 158 S.E.2d at 828. Nor does the fact of a rear-end collision necessarily establish the existence of negligence. "Although the admission by defendant that her car collided with the rear of plaintiff's vehicle permits a legitimate inference that defendant was not maintaining a proper lookout or was following plaintiff too closely, it does not, however, compel either of those conclusions but instead simply raises the question for the jury's ultimate determination." Garrett v. Smith, 163 N.C. App. 760, 765, 594 S.E.2d 232, 235 (2004) (citations omitted). Further, even if Plaintiff had a green arrow as he testified, he still would have the duty to exercise reasonable care in making the turn:
The duty of a driver at a street intersection to maintain a lookout and to exercise reasonable care under the circumstances is not relieved by the presence of . . . traffic signals[.] . . . [The] obligation of using due and reasonable care [still] applies.
Bass v. Lee, 255 N.C. 73, 78-79, 120 S.E.2d 570, 573 (1961) (internal citations omitted). Thus, "even though a driver possesses a green light, `the duty rests upon [the driver] to maintain a reasonable and proper lookout for other vehicles in or approaching the intersection.'" Kummer, 165 N.C. App. at 264, 598S.E.2d at 226 (quoting Beatty v. Bowden, 257 N.C. 736, 739, 127 S.E.2d 504, 506 (1962)) (citation omitted).
In the instant case evidence was presented that could support inferences that: (1) Plaintiff had a history of previous drug use, and was intoxicated or impaired at the time of the accident; (2) Defendant, who had a green light at the intersection of S. Saunders and Ileagnes, exercised reasonable care entering the intersection; (3) Plaintiff had a green light, not a green arrow; (4) Plaintiff drove into the southbound lanes of S. Saunders St. without waiting for the oncoming traffic to pass, and; (5) after Plaintiff abruptly pulled in front of her, Defendant could not avoid the collision. These inferences could support the jury's finding Plaintiff failed to prove Defendants' negligence. We conclude that competent evidence was presented to support the jury's verdict, and that the trial court did not abuse its discretion by denying Plaintiff's motion for a new trial. This assignment of error is overruled.

II.
Plaintiff also argues that the trial court erred by taxing to him an expert witness fee for the testimony of Dr. Frater. Plaintiff's sole argument is that, because he is entitled to a new trial, the entry of a cost order was "inappropriate." As we have concluded that it was not error to deny Plaintiff's motion for a new trial, we necessarily reject this argument. This assignment of error is overruled.
For the reasons discussed above, we conclude that the trial court did not err and that its orders should be Affirmed.
Chief Judge MARTIN and Judge BRYANT concur.
Report per Rule 30(e).