OLIN ODELL OWENS v.
NORFOLK AND WESTERN RAILWAY COMPANY, INC.
AND
MARION JEAN OWENS v.
NORFOLK AND WESTERN RAILWAY COMPANY, INC.

(Filed 7 November 1962.)

**Railroads §§ 5, 6—**

Plaintiffs' evidence tending to show that a motorist, on a dark and rainy night, approached a grade crossing, with which he was familiar, at a speed of 25 miles per hour when he could see only 25 feet ahead, and ran into the side of a locomotive that had stopped so as to block only half of the street, and that the motorist kept looking ahead without watching for an approaching train and did not see the engine or decrease speed until he was within a car or a car and a half length therefrom, *held* to disclose that negligence of the motorist was the real, efficient, and sole proximate cause of the collision, barring as a matter of law any recovery by the motorist or by his passenger.

APPEAL by plaintiffs from *Gwyn, J.,* second week of 19 March 1962 Term of FORSYTH.

Two civil actions to recover damages, in Olin Odell Owens' case for medical bills, loss of wages, personal injuries, and property damage, and in the case of Marion Jean Owens, his wife, for personal injuries and medical bills, received in a grade-crossing accident in the city of

Winston-Salem, North Carolina, allegedly resulting from the negligence of defendant—consolidated by consent for the purpose of trial.

From a judgment of involuntary nonsuit at the close of plaintiffs' case, the male plaintiff appeals, and from a judgment of involuntary nonsuit at the close of all the evidence, the *feme* plaintiff appeals.

*Oliver T. Denning and Richard C. Erwin, Sr. for plaintiff appellants.*
*Craige, Brawley, Lucas & Hendrix and Hamilton C. Horton, Jr., by Hamilton C. Horton, Jr., for defendant appellee.*

PER CURIAM. Plaintiffs' sole assignments of error are the allowance of defendant's motions for judgment of involuntary nonsuit.

Plaintiffs' evidence tends to show the following facts: The actions arose out of an automobile-train collision, which occurred about 9:00 o'clock p.m. on Sunday, 11 September 1960 at a grade crossing on South Main Street, in the city of Winston-Salem. U.S. Highway #52 and State Highway #8 merge into South Main Street, and this is the main highway leading to places south. South Main Street is 42 feet wide, runs north and south, and is surfaced with black asphalt at and near the grade crossing, where a spur track of the defendant railway crosses the street at a long, slanting angle, and runs generally in a northwest-southeast direction. Traveling south along South Main Street toward the grade crossing the street is level. Immediately beyond the grade crossing South Main Street starts on an incline. To warn travelers on the street there is a crossarm on either side of the spur track about 20 feet from the tracks to indicate a grade crossing. There is a telephone pole in front of the crossarm on the side of the grade crossing plaintiffs were approaching.

The male plaintiff, with his wife sitting beside him, was driving his 1950 Ford sedan at a speed of 25 miles an hour in a southerly direction on South Main Street, and approaching this grade crossing about 9:00 o'clock p.m. in transit to his home in Lexington, North Carolina. The male plaintiff testified on direct examination: "I noticed my speedometer, and I was driving at that time 25 miles an hour." The *feme* plaintiff testified on cross-examination: "It seemed like to me he was going 10 to 15 miles an hour, but I didn't look at the speedometer; he just seemed to me like he was driving slow." The male plaintiff knew of the grade crossing on South Main Street, because he had crossed it many times—about twice a month. The male plaintiff testified on cross-examination: "I knew that the crossing was there in the daytime, because you can see it; but at night, if it's a very bad night, you wouldn't take your eyes off the highway to look for a railroad crossing." It was raining and kind of foggy. He had his lights

on dim, his windshield wipers were working, the windows of his automobile were rolled up tight, and his brakes were good. There were no lights along the street. No other automobile was in the vicinity. The male plaintiff testified on direct examination: "It was raining hard. I had my lights on dim, and that would mean that I couldn't see over 25 feet, if that far. * * "It was real dark and cloudy, and with the lights on bright you couldn't hardly see the road at all; it was a black road." D. E. Williard, a witness for plaintiffs and a policeman of the city of Winston-Salem, who arrived at the scene of the accident a few minutes after it occurred, testified on redirect examination: "I would say the visibility was in the neighborhood of 300 to 400 feet, depending on what you were looking for; if you were looking for a light specifically, you could probably have seen it 800 to 1000 feet." The male plaintiff was keeping his eyes straight ahead the whole time. As he approached near the crossing, he heard no whistle or signal from the train, saw no flagman in the street ahead waving a lantern, and no lights. When he was a car or a car and a half length from the grade crossing, he saw a train on the crossing. He applied his brakes, and that's all he knows. He does not know in what direction the train was traveling. He was right on the train before he saw it.

Plaintiffs' automobile ran into the left front side of the train's black engine. The outermost protrusion of the engine stopped on the grade crossing about 12 feet from the west curb line of South Main Street—sufficient room for an automobile to have crossed the street ahead of it in safety.

In the collision both plaintiffs were injured and the automobile damaged.

Defendant's evidence shows the following: Its train, consisting of a diesel engine, a yellow refrigerator car, and two boxcars, was approaching the grade crossing at a speed of about two or three miles an hour. The engine's headlight was burning brightly. A brakeman with an electric lantern went ahead of the train, and stood in the street to warn or signal oncoming traffic. The engine was blowing its whistle and ringing its bell. The brakeman in the street saw plaintiffs' automobile 250 to 300 feet away approaching the grade crossing. He kept waving his lantern, until the automobile was almost on him, when he made a pivot out of its way, and the automobile crashed into the left front of the train's engine. When the automobile hit the engine, the engine had come to a complete stop. When the operator of the engine saw the automobile coming he gave short and long blasts with his whistle, and when he saw the automobile still coming, he applied his emergency brakes, and came to a complete stop a few seconds before the automobile ran into the engine. The engine stopped in about

the middle of the street. It was agreed that the train was moving northwestwardly down a slight grade, and consequently it would seem that the approaching train was in some degree facing toward plaintiffs' automobile traveling southwardly.

Conceding that plaintiffs' evidence, when considered in the light most favorable to them, *Watters v. Parrish*, 252 N.C. 787, 115 S.E. 2d 1, shows that defendant was negligent in operating its train at night and approaching the grade crossing without the headlight of its engine burning and without giving any signal of its approach, nevertheless, it is manifest that the negligence of the male plaintiff in operating his automobile on a rainy and kind of foggy night at a speed, as he says, of 25 miles an hour (his wife's testimony as to speed seems a pure guess not entitled to probative value), when he could see only 25 feet ahead, along a street with which he was thoroughly familiar, and well knew that there was a grade crossing ahead and a crossarm beside the street to indicate the grade crossing, and under such conditions to keep looking straight ahead and not to look for the crossarm which he knew was there, so as to see and know the grade crossing was immediately ahead, and not seeing the train and not decreasing speed until he was within a car or a car and a half length from it and running into the left side of the engine instead of crossing in safety in front of the stopped engine, as their evidence shows he could have done, was active negligence on the part of the driver of the automobile, the male plaintiff, operating subsequent to any negligence on the part of defendant, and such negligence of the male plaintiff was the real, efficient and sole proximate cause of the injuries to himself and damage to his automobile and of his wife's injuries.

Plaintiffs' evidence when tested by settled principles of law, explained and applied in *Johnson v. R.R.*, 214 N.C. 484, 199 S.E. 704; *Jeffries v. Powell*, 221 N.C. 415, 20 S.E. 2d 561; *Jones v. R.R.*, 235 N.C. 640, 70 S.E. 2d 669; *Faircloth v. R.R.*, 247 N.C. 190, 100 S.E. 2d 328, is insufficient to make out a case for the jury as to both plaintiffs. *Meacham v. R.R.*, 213 N.C. 609, 197 S.E. 189, strongly relied on by plaintiffs, is distinguishable in that Meacham stopped the truck he was driving about ten feet from the switch track, looked and listened and heard nothing; that he next stopped about ten feet of the first track, looked and listened, and did not see or hear anything; that he then started up again, traveled a distance of 40 or 50 feet in low gear at a speed of three or four miles an hour, and was struck by the tender of the shifting engine on the fourth track.

Both judgments of involuntary nonsuit below are
Affirmed.