The GUILFORD NATIONAL BANK OF
GREENSBORO, Administrator c.t.a.,
d.b.n., of the Estate of Jesse M. Coble,
Deceased, Plaintiff,

v.

SOUTHERN RAILWAY COMPANY,
Defendant,

v.

Garland BATCHELOR, Executor of the
Estate of Annie J. Coble, Deceased,
Third-Party Defendant.

Civ. A. No. C–185 G–58.

United States District Court
M. D. North Carolina,
Greensboro Division.

Nov. 20, 1962.

**2**

Jordan, Wright, Henson & Nichols, Greensboro, N. C., for plaintiff.

McLendon, Brim, Holderness & Brooks, Greensboro, N. C., for defendant.

HAYES, District Judge.

Jesse Coble and wife were instantly killed between 9 and 10 P.M. in July, 1961, when the Cadillac car driven by Mrs. Coble collided with defendant's Crescent Limited at the Hill Top grade crossing near Greensboro. The personal representative of each one sued the defendant; the cases were consolidated and tried before a jury. At the close of the evidence and in accordance with Rule 50, the defendant moved for a directed verdict in its favor which the Court took under advisement under Section b. of Rule 50 and let the jury render its verdict which was in defendant's favor in both cases. Both moved to set aside the verdict and argued the motion before the court as the record will disclose, at which time it was over-ruled for the reasons appearing in the record. Thereafter, Jesse Coble's representative filed a motion in writing to set aside the verdict which was denied as of Oct. 22, 1962. It is deemed expedient to state in more detail the reasons of the Court for refusing to set aside the verdict and to grant a new trial.

Judgment was rendered in favor of defendant on the verdict and there was no order on the motion for a directed verdict. However, in consideration of the motion to set aside the verdict, the Court considered the whole case, including the motion for directed verdict, and is of the opinion that in no event is the defendant liable for the death of Jesse Coble.

The evidence establishes beyond all controversy that the immediate and sole proximate cause of the collision was the negligence of Mrs. Coble in driving on the railroad track in front of an approaching train. Manifestly she assumed she could get across before the train reached the crossing but she under-estimated the speed of the train or its distance from her, or both, and her negligence became the immediate and sole proximate cause of the intestate's death.

When the evidence is without dispute or is so conclusive as to remove all doubt, it is the duty of the court to direct a verdict and it follows that a verdict in defendant's favor should not be set aside if it is conclusively established that plaintiff is not entitled to recover in any event. Wachovia Bank and Trust Co. v. U. S., 288 F.2d 750, 757 (4th Cir.).

The controlling evidence here is established by four eye witnesses to the tragedy: the engineer and fireman, and Mr. and Mrs. Russell Hall. Mr. Hall died after the accident and before the trial but his statement at the time as a part of the res gestae is before us by Mrs. Hall. The Cobles and the Halls lived in Sedgefield and these couples had participated in a charcoal steak dinner with their friend ex-Mayor Morris of Greensboro who lived about 10 miles North of Sedgefield. Defendant maintains its double track main line railroad between Greensboro and Charlotte and it passes along the Northwestern edge of Sedgefield. The public highway, known as Hill Top road, crosses the railroad tracks in the outskirts of Greensboro in an undeveloped area where no street lights are maintained. Since the Halls were unfamiliar with the many intersections of the highways between the residence of Mr. Morris and Hill Top crossing, the couples agreed to leave Morris' at the same time and Cobles were to travel slowly enough for Halls to follow. It is about 400 feet from the top of the Hill down to the railroad crossing. Mrs. Hall saw the Coble car enter the railroad

crossing and heard the whistle blowing at that time and heard it blowing for sometime before that; she noticed that the Coble car neither stopt nor slowed down before entering the crossing, and that the brake lights did not come on either before or at the time the car entered the crossing. The tail light disappeared out of her sight. Her husband exclaimed "They did not make it". But she felt sure they did because she felt the train had run between her and the Coble car so she could not see the tail light. When the Hall car got to the crossing it was necessary for them to wait until several coaches cleared the crossing. Then the Halls crossed and looked, but seeing no signs of a wreck nor of the Coble car, went on home. Mrs. Hall, being still uneasy, phoned the Coble residence and getting no answer, assumed they went on to the Post Office, as was their custom, and did not learn until the next day that her friends were killed at the crossing. There is no basis for questioning the testimony of Mrs. Hall. Both the engineer and fireman saw the car as it approached the crossing at a speed of about 25 miles per hour and it neither stopt nor slowed down before getting on the tracks. (Mrs. Hall completely corroborates these facts). The North bound train was the Crescent Limited, on schedule, making about 60 miles per hour, running on the Eastern track. Its head light was burning and an oscillating light also was burning. The physical conditions disclose that before the Cobles entered the South bound track they had a straight and clear view up the track to the South for at least ½ mile. The lights on the engine were plainly visible before the Cobles entered the North bound track. The three living eye witnesses testify that the whistle was blowing before the impact and for sometime before.

The conclusion is inescapable that the Cobles knew the train was approaching but mistakenly thought they could cross before it reached the crossing but they underestimated the speed of the train or its distance from the crossing. The next people who arrived at the scene were two ladies who heard the whistle blow while they were in the church yard about two miles away and who commented at the time about the whistle blowing so long and it sounded so lonely and sad.

██ It is the duty of motorists to yield the right of way to the trains and the train crew have a right to assume until the last moment that they will do it. When a motorist drives on to a railroad track in front of an on-coming train which the motorist knows, or in the exercise of ordinary care could have known, such negligence is, under the law of North Carolina, the immediate and sole proximate cause of the resulting injury. Herndon v. North Carolina R. R., 234 N.C. 9, 65 S.E.2d 320. It was held in Kilmer v. Norfolk and W. Ry. Co., 45 F.2d 532, 537 (4th Cir.), that where the negligence of the driver is the sole cause of injury, it is not necessary to decide whether a guest in the car was guilty of contributory negligence.

There is no substantial evidence in this case to show that the railroad was guilty of any negligence which proximately caused the death of the deceased.

The purpose of ringing a bell or blowing a whistle is to apprise travellers that a train is approaching but when the traveller knows or in the exercise of ordinary care would have to know of its approach, his going on the track in front of the train becomes the immediate cause of the injury.

██ Moreover, if there was any negligence on the part of the defendant, which is not conceded, it was insulated by the intervention of the negligence of the driver of the automobile by driving on the track in front of a train approaching at 60 miles per hour. This was a new, independent and efficient cause which broke the continuity of the original wrong and is deemed in the law of this state to be the sole proximate cause. Justice Brogden cites the law of this state fully in Hinnant v. Atlantic Coast Line R. Co., 202 N.C. 489, 163 S.E. 555. The doctrine was applied in that case

**4**

against a guest in the automobile. He also wrote the opinion in Earwood v. Southern R. Co., 192 N.C. 27, 133 S.E. 180. Owens v. Norfolk & W. R. Co., 258 N.C. 92, 128 S.E.2d 4; Jenkins v. Atlantic Coast Line R. Co., 258 N.C. 58, 127 S.E.2d 778 and Carter v. Atlantic Coast Line R. Co., 256 N.C. 545, 124 S.E.2d 561.

The doctrine of insulated negligence is firmly established as the law of this state. Butner v. Spease, 217 N.C. 82, 6 S.E.2d 808, citing Hinnant v. Atlantic Coast Line R. Co., supra, and Herman v. Atlantic Coast Line R. Co., 197 N.C. 718, 150 S.E. 361. Guests were not allowed to recover in these crossing cases. In the Spease case, supra, Spease suddenly made a left turn in front of the Butner automobile coming toward him at an unlawful speed, but the negligence of Butner was insulated by the new independent negligence of Spease which barred the guest from recovering against Butner.

■ *There was ample evidence to warrant the jury in finding Jesse Coble exercised joint control, and a right to, over the automobile; that the negligence of Mrs. Coble was imputable also to Jesse.* Jesse purchased the car on the installment plan, but put the title in her name; he paid all cost of up-keep, including gas to operate it; used it at will in his business; treated it as his property and deducted depreciation on it in his tax returns. There was not a scintilla of evidence to indicate any lack of harmony or lack of cooperation between them. His orders prevailed. She was on a salary under him in his construction operation. He would send her on business missions in this car. These were important circumstances on the question of his contributory negligence. He got in this car at the Morris residence less than 30 minutes before the accident and was sitting on the front seat to his wife's right; the train was approaching from his right; he was in a better position to see and hear the train. If he had warned her of the train's approach and told her to stop, it is inconceivable that she would

not have made at least an effort to stop. Had she applied her brake, the brake light would have come on and Mrs. Hall positively said it did not. It appears that both Mr. and Mrs. Coble thought they could beat the train. The tragedy was not caused by the defendant and the judgment of dismissal was in accordance with the proof.