HARRY L. COOK, Plaintiff v. EXPORT LEAF TOBACCO COMPANY, Defendant AND Third Party Plaintiff v. JOHN L. COOK, D/B/A JOHN L. COOK PLUMBING COMPANY, Third Party Defendant

No. 807SC429

(Filed 16 December 1980)

**Master and Servant § 19— injury to employee of independent contractor —defective wheels on portable elevator — sufficiency of evidence of negligence and contributory negligence**

In an action to recover for personal injuries sustained by plaintiff on defendant's premises while in the scope of his employment, evidence was sufficient to be submitted to the jury where it tended to show that plaintiff worked for his father who was an independent contractor who had performed maintenance work for defendant for several years; defendant was obligated to furnish equipment under its maintenance contract with plaintiff's father; one of defendant's employees was specifically responsible for maintaining and replacing the tools; the portable elevator on which plaintiff was working at the time of his injuries was not a simple tool but was a complex instrument capable of moving an adult 25 feet into the air; plaintiff's father set the spring loaded lock on the wheels at the front of the elevator, and the wheels were set in a fixed direction parallel to the edge of the loading platform where the repairs were to be made; plaintiff then applied the brakes to the rear wheels and shook the elevator to determine that the brakes and locks were holding; as plaintiff was completing the repairs, he heard metal to metal clinking sounds, and the elevator began to roll off the platform; defendant had earlier been informed that the wheels on the elevator needed replacing; and defendant's employee who was responsible for the equipment told plaintiff that the elevator had been repaired, and it appeared to plaintiff, upon inspection, that some repair work had been done. Moreover, evidence was insufficient to show that plaintiff was contributorily negligent as a matter of law in not discovering the defects in the brakes, in engaging the brakes by pressing down instead of up on a lever, in placing

---

Cook v. Tobacco Co.

---

the scaffold at the edge of the loading dock, in failing to insure that his helper remained close at hand, in using the elevator when he knew the brakes needed replacing, or in failing to use outriggers to stabilize the elevator.

APPEAL by plaintiff from *Reid, Judge,* Judgment entered 6 December 1979 in Superior Court, WILSON County. Heard in the Court of Appeals 17 October 1980.

This is an action brought by plaintiff under the provisions of G.S. 97-10.2 against defendant for personal injuries sustained by plaintiff on defendant's premises while in the scope of his employment with the third party defendant, plaintiff's father. Defendant filed answer denying negligence, asserting contributory negligence, and impleading plaintiff's employer for indemnification. Thereafter, defendant filed an amended answer based upon the alleged joint negligence of the third party defendant.

On 14 August 1979, defendant filed a motion for summary judgment on its third party claim seeking judgment that the contract between the parties requires indemnification for any recovery by plaintiff. The trial court granted summary judgment for defendant, and third party defendant appealed to the Court of Appeals. On 3 June 1980 this Court dismissed the appeal as interlocutory.

At trial of the case on its merits, the trial judge granted defendant's motion for a directed verdict. The court held plaintiff's evidence was insufficient as a matter of law to establish defendant's negligence proximately causing plaintiff's injuries and that plaintiff was contributorily negligent. Plaintiff appeals. The controlling facts are discussed in the opinion.

*Connor, Lee, Connor, Reece & Bunn, by James F. Rogerson and Cyrus F. Lee, for plaintiff appellants.*

*Hudson, Petree, Stockton, Stockton & Robinson, by Norwood Robinson and Daniel R. Taylor Jr., for defendant appellee.*

HILL, Judge.

Plaintiff assigns as error the trial judge's action allowing defendant's motion for a directed verdict.

When a motion for a directed verdict is made under Rule 50, the trial judge must determine whether the evidence taken in the light most favorable to the plaintiff and giving him the benefit of every

Cook v. Tobacco Co.

reasonable inference which can be drawn therefrom, was sufficient to withstand defendant's motion for a directed verdict. In ruling on a motion for a directed verdict, the court must resolve any discrepancies in the evidence in favor of the party against whom the motion is made. *See* Shuford, N. C. Civil Practice and Procedure, § 50-5, p. 410 (1975), and cases cited therein. The foregoing rules are elementary, but must be kept in perspective in analyzing the evidence before us.

Justice Higgins, speaking for the Court, in *Burr v. Everhart,* 246 N. C. 327, 329, 98 S. E. 2d 327 (1957), set out the essential elements a plaintiff must show in order to make out a case of actionable negligence. The plaintiff must show

> (1) the defendant has failed to exercise proper care in the performance of a duty owed to the plaintiff; (2) that the negligent breach of that duty was the proximate cause of the plaintiff's injury; (3) that a person of ordinary prudence should have foreseen such result was probable under the conditions as they existed. (Citations omitted.)

The evidence in the record is extensive and meets the requirements of *Burr, supra.* John L. Cook (John) is an independent contractor who for several years has performed maintenance work for Export Leaf Tobacco Company (Export). Export furnished any tools and equipment John needed while working on Export's premises. John's son, Harry L. Cook (Harry), was John's employee and was injured during his employment when a portable elevator upon which Harry was standing, and which was furnished by Export, rolled off a loading dock and fell into the parking area below. The plaintiff, Harry, has been compensated for his injuries under the Worker's Compensation Act.

On 29 October 1976, Export's maintenance foreman, Wesley Napier, instructed John and Harry to go to the loading platform at the plant and repair two air hoists. Export wanted the repair to be made immediately. The floor of the platform was twelve feet wide and five feet above the asphalt parking lot, and sloped slightly toward the lot. The air hoists and motors were 18 inches apart, on I beams located approximately 25 feet above the platform, and were operated from control boxes affixed to rubber hoses which hung to within four or five feet of the floor.

Export furnished John with a portable electric elevator when

work was to be done in the ceiling area. During the year prior to the accident, John was required to use a particular elevator--one assigned to Wesley Napier. The elevator platform extends twenty to twenty-five feet in the air by scissor-like action and is mounted on a steel base located about one foot above the floor. There are four metal wheels under the base of the elevator which can swivel 360 degrees. The elevator weighs approximately 1700 pounds. The wheels are eight inches in diameter, two inches in width, and mounted on a one-half inch axle which was supported by a caster on a swivel.

The two front wheels had spring loaded locks designed to be secured manually in a fixed direction when necessary. The spring loaded locks used a plunger to fit into four notches which were 90 degrees apart on the caster of the wheel. The locks were applied by manually releasing the plunger in one of the four notches. The two front wheels were then set in a fixed direction and were designed not to swivel, though they could still roll on the floor in a fixed direction.

The two rear wheels were equipped with a brake of cam and lever design. By raising the lever up and away from the floor, the cam which was attached to the lever would press a metal plate up against the treads of the wheel, preventing the rear wheels from both swiveling and rolling.

The elevator was also equipped with four outriggers designed to be used on each side of the elevator for additional supports.

Plaintiff's evidence tends to show that John and he rolled the elevator from inside the building into position on the loading platform, proceeded to repair the first hoist, lowered the elevator, and moved the elevator eighteen inches into position to repair the second hoist. Because the conveyor was protruding onto the loading platform, it was necessary to set the elevator about one foot from the edge of the platform, thus preventing use of the outriggers. The conveyor could have been moved but would not run all the way back into the building. John testified that he set the spring loaded lock on the wheels at the front of the elevator, which were set in a fixed direction parallel to the edge of the loading platform. Harry then applied the brakes to the rear wheels and shook the elevator to determine that the brakes and locks were holding.

Harry testified that he then raised the platform on the elevator approximately twenty feet in the air. As he was completing the repair

of the second hoist, Harry heard a metal to metal clinking sound to his right, and in a second or two, heard a metal to metal clinking sound to his left. The elevator began to roll off the platform. Harry grabbed the I beam and attempted to hold the elevator, but was unable to do so. The elevator rolled off the loading dock, tipped, causing Harry to fall onto the parking lot and suffer serious injury.

The evidence tends to show that prior to the accident John Cook walked four or five feet from the elevator to determine if the Export foreman had any additional work to be done. The foreman noticed the scaffold rolling. John ran for the scaffold, but could not stop it. He noticed the spring lock wheels on the front of the scaffold were running perpendicular to the front edge of the platform and the rear wheels were no longer in a parallel position with the edge of the dock.

John testified that he had heard the metal to metal clinking noise from the scaffold before--two or three weeks prior to the accident. The spring loaded locks and the brakes had disengaged, and the elevator had moved.

There is evidence that Export had been advised the elevator needed new wheels and that plaintiff had been told the wheels were back ordered. Two or three days prior to the accident, Harry was assigned to repair a roof drain. When he started rolling the scaffold elevator out of the workshop, the wheels began wobbling. The two front locks swung around and ran into Harry and Charles Butler, an Export employee. The scaffold locked in a sideways position. Harry reported the problem with the elevator to Napier and refused to use it. Napier instructed Harry and his helpers to work on another job and stated he would repair the scaffold. After lunch, Napier told Harry he had fixed the scaffold; that he had repaired the wheels. Harry noticed the wheels looked cleaner and that grease was coming out of the grease fitting. Harry used the elevator that day, but did not use it again until the date of the accident.

Export contends plaintiff has failed to show any evidence beyond conjecture or speculation as to the cause of his injury or breach of any legal duty by Export. Export also alleges contributory negligence as a defense. Export contends that its duty to Harry, at the very most, was to exercise due care to inspect, at reasonable intervals, the tools, appliances, and equipment furnished. *Petty v. Print Works,* 243 N. C. 292, 90 S.E. 2d 717 (1956).

Export was obligated to furnish equipment under its mainte-

nance contract with John. Wesley Napier was responsible for maintaining and replacing the tools. This obligation was not a simple bailment where tools and equipment were furnished for convenience. The elevator furnished by Export was not a simple tool such as a hammer, axe, chisel, etc., where inspection by the user would readily reveal a defect. Rather, it was a complex instrument capable of moving an adult 25 feet into the air.

Justice Bobbitt (later Chief Justice), in *Petty, supra,* at pp. 300, 301, states that,

'A contractee who agreed to provide a contractor with a particular instrumentality for the purpose of the stipulated work is ordinarily liable for any injury which a servant of the contractor may sustain during the progress of the work, by reason of a defect which was known to the principal employer, or which he might have discovered by the exercise of reasonable care, at the time when the instrumentality was turned over to the contractor." (Citation omitted.)

We find that plaintiff submitted enough evidence of Export's notice of the alleged defects in the elevator and enough evidence of improper repairs to withstand a motion for directed verdict.

Export argues that Harry was contributorily negligent as a matter of law and argues several bases for its position. We discuss them *in seriatim.*

Export contends that any defect in the brakes ought to have been discovered by plaintiff. The elevator consisted of wheels, a base platform and extension apparatus, together with a cage. It weighed 1700 pounds. When plaintiff was advised that the elevator had been repaired by Export's foreman, he looked at the wheels and saw that work had been done. Harry was under no duty to make a more detailed examination. This is especially true given the evidence that Export was pressing John Cook to get the hoists repaired so that the day's tobacco shipments could be received.

Export further argues that Harry was contributorily negligent as a matter of law, pointing to his testimony that the brakes were engaged by pushing *down* on a lever. Export points to the exhibit and demonstrates that pressing *down* on the lever *disengages* the brake shoe.

Cook v. Tobacco Co.

During oral argument before this Court, the exhibit was placed in an upside down position. In that position downward pressure toward the floor would have engaged the shoe. We do not know in what position the exhibit may have been in the trial court.

To explain his action, Harry testified without objection that before ascending to the second beam he engaged the foot brakes again and his father engaged the spring loaded locks. Harry testified that his father told him he had engaged the locks. Harry further stated that he "shook the scaffolding and made sure that it was secure before [he] went up on it, and the brakes held, and the locks held on the front end." This testimony sufficiently contradicts Export's argument that Harry could not have engaged the brakes by pushing down so as to require the jury to pass on the question.

Export further demonstrated at trial and in oral argument that any noise from the device locking the wheels in position comes only when the expanding spring causes the plunger to engage; never when it disengages. Yet, Harry testified that he heard a metal to metal clinking sound right before the brakes disengaged. Export argues that the testimony, being contrary to the laws of science and nature, is not legally sufficient evidence to be passed on by a jury. *Burgess v. Mattox,* 260 N. C. 305, 132 S. E. 2d 577 (1963); *Jones v. Schaffer,* 252 N. C. 368, 114 S. E. 2d 105 (1960).

Harry testified that he heard a clinking sound, first to his right and then to his left; that he recognized the sounds as coming from the wheels; and that the sound was of locks disengaging. Harry's testimony is contrary to Export's demonstration, but in no way does Export's demonstration reflect an irrefutable law of nature. The demonstration was conducted under controlled circumstances. We do not know what pressure is generated on a lock through leverage by an adult standing on a platform 20 or more feet above an 8-inch wheel. We must conclude it to be a possibility for consideration by a jury that metal touched metal and created sound, and that such sound could have been caused by a release of the brakes and disengaging of the plungers.

Export next argues that Harry was contributorily negligent as a matter of law because he placed the scaffold at the edge of the loading dock. Export contends Harry's failure to insure that his helper remained close at hand was negligence and that Harry's contributory negligence became more flagrant considering that Harry knew the

brakes needed to be replaced. We do not agree. The evidence shows that the hoists could not be run all the way back into the warehouse. The jury must decide whether Harry was contributorily negligent in placing the scaffold where he did.

We cannot agree that Harry was contributorily negligent as a matter of law in failing to insure that John remained close by. Plaintiff was working 20 feet in the air on a problem which required that he direct his attention upward. Harry had no reason to anticipate John's departure.

Nor can we agree that Harry was contributorily negligent as a matter of law because he knew the brakes needed replacing. Harry had been advised that the elevator had been repaired. He saw his father engage the directional plunger on the front wheels. Harry personally affixed the brakes and then shook the elevator to determine that it was in place and holding.

Defendant had instructed Harry to make immediate repairs on the hoist, so that tobacco could be unloaded on the dock. Unless a condition is so obviously dangerous that a man of ordinary prudence would not have run the risk under the circumstances, conduct which otherwise might be pronounced contributory negligence as a matter of law is deprived of its character as such if done at the direction or order of defendant. *Swaney v. Steel Co.,* 259 N.C. 531, 543, 131 S.E. 2d 601 (1963).


Export contends failure to use outriggers to stabilize the elevator constituted contributory negligence as a matter of law. We do not agree. Harry contends the outriggers could not be used so near the edge of the dock. The issue of Harry's contributory negligence is one to be considered by the jury. The evidence of plaintiff's contributory negligence as a matter of law was not sufficient to form the basis for a directed verdict against him.

Next, we must decide whether it was competent for plaintiff to testify that the locks in the elevator he was using had released, based upon the sounds he heard. Plaintiff was not allowed to testify that the noise he heard just prior to the scaffold rolling off the platform was the spring locks disengaging. The trial judge ruled that Harry had no basis for a conclusion that the noise he heard was the disengaging of the brakes or the locks on the brakes.

In re Horne

Previously, plaintiff had testified that he had been working with this type of scaffold for over two years prior to the accident and had been using the particular scaffold involved in the accident three or four times a week for approximately one year prior to the accident.

Harry testified he was familiar with the sound the locks and brakes made, specifically describing an incident a few weeks prior to the accident during which he heard the same clinking noise immediately before the scaffold began rolling. Harry safely descended during that incident and discovered the locks and brakes had disengaged. Plaintiff further testified that the clinking noise was caused by a weak spring in the locks which allowed it to disengage, and the noise was created when the plunger came out of the slot.

Defendant argues that plaintiff on cross-examination could not explain how disengaging the lock made a sound when he was not able to demonstrate such a noise; that plaintiff only established sound when he engaged the lock. Such discrepancies go to the weight of the evidence and are matters for the jury.

The trial judge erred. The testimony should have been admitted. Harry had a basis, through experience, for his opinion.

For the reasons stated above, the judgment of the trial court is

Reversed.

Chief Judge MORRIS and Judge ARNOLD concur.