THOMAS BROTHERS OIL AND GAS, INC. v. SOUTHERN RAILWAY COMPANY AND B. G. CHAMBERS

No. 8118SC211

(Filed 3 November 1981)

1. **Railroads § 5.7— negligence by train engineer—sufficiency of evidence**

    In an action to recover damages resulting from a grade crossing collision between plaintiff's tractor-trailer and defendant's train, plaintiff's evidence was sufficient for the jury to find that defendant's engineer was negligent in failing to observe plaintiff's tractor-trailer on the railroad tracks at a time sufficient for the engineer to apply successfully the train's emergency brakes and in exceeding the speed limit for the train imposed by defendant's own safety regulations.

2. **Railroads § 5.8— crossing accident—contributory negligence by vehicle driver**

    In an action to recover damages resulting from a grade crossing collision between plaintiff's tractor-trailer and defendant's train, the evidence did not disclose that plaintiff's driver was contributorily negligent as a matter of law where it tended to show that plaintiff's driver had stopped the tractor-trailer

on a servient highway between defendant's tracks and a dominant highway while waiting for traffic on the dominant highway to clear; before crossing defendant's tracks, plaintiff's driver looked up and down the tracks in both directions but could see no train coming; plaintiff's driver stopped as close as possible to the dominant highway, but since the distance between the railroad tracks and the highway was less than the length of the tractor-trailer, a portion of the trailer remained on the tracks; the tractor's air conditioner was running full speed and the cab windows were rolled up; and plaintiff's driver was concentrating on the traffic on the dominant highway when his trailer was struck by defendant's train.

APPEAL by plaintiff from *Walker, Judge.* Judgment entered 13 October 1980 in Superior Court, GUILFORD County. Heard in the Court of Appeals 24 September 1981.

This is an action involving a collision between plaintiff's tractor-trailer and defendant railway's train. Plaintiff's driver had stopped the tractor-trailer on a servient highway — Gallimore Dairy Road — between defendant railway's tracks and a dominant highway — Highway 421 — waiting for traffic to clear. The distance between the railroad tracks and highway was less than the length of the tractor-trailer, and a portion of the trailer remained on the tracks. Plaintiff alleged that defendant railway's engineer negligently failed to keep a proper lookout, that he approached the crossing at an excessive and unsafe speed, and that he should have known that plaintiff's driver would be unable to remove his tractor-trailer from the train's path in time to avoid a collision. Defendants sought damages to the train by way of counterclaim and pleaded contributory negligence, alleging that plaintiff's driver failed to keep a proper lookout for the train and failed to heed the locomotive's warnings of approach. Plaintiff denied contributory negligence and pleaded the doctrine of last clear chance.

The trial judge granted defendants' motion for directed verdict at the end of all the evidence on three grounds: that plaintiff's evidence failed to show negligence on the part of defendants, that plaintiff's evidence established contributory negligence as a matter of law, and that plaintiff's evidence provided no basis from which the applicability of the doctrine of last clear chance could be drawn.

Plaintiff appeals from the judgment entered on the directed verdict for defendants.

*Perry C. Henson and George B. Daniel, by Perry C. Henson, Jr., for plaintiff-appellant.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, by L. P. McLendon, Jr. and Robert A. Singer, for defendant-appellees.*

HILL, Judge.

We find it unnecessary to address all the issues raised by the parties in this action. We therefore direct our attention to the single issue of whether the trial judge erred in granting defendants' motion for a directed verdict on the grounds stated.

The question raised by a directed verdict motion is whether the evidence is sufficient to go to the jury. *Rappaport v. Days Inn of America, Inc.*, 296 N.C. 382, 250 S.E. 2d 245 (1979); *Kelly v. Harvester Co.*, 278 N.C. 153, 179 S.E. 2d 396 (1971). In reviewing such a motion granted at the close of all the evidence, we "[n]ot only consider evidence offered by the plaintiff but that offered by the defendant which is favorable to the plaintiff or not in conflict therewith, or when it may be used to clarify or explain the plaintiff's evidence." *Tew v. Runnels*, 249 N.C. 1, 6, 105 S.E. 2d 108, 111 (1958). *Accord, Blanton v. Frye*, 272 N.C. 231, 158 S.E. 2d 57 (1967); *Jenkins v. Starrett Corp.*, 13 N.C. App. 437, 186 S.E. 2d 198 (1972). A directed verdict motion by defendant may be granted only if the evidence is insufficient as a matter of law to justify a verdict for plaintiff. *Husketh v. Convenient Systems, Inc.*, 295 N.C. 459, 245 S.E. 2d 507 (1978); *Dickinson v. Pake*, 284 N.C. 576, 201 S.E. 2d 897 (1974).

Applying the above standards to the evidence, we conclude that the trial court erred in granting defendants' motion for directed verdict. We first address the court's ruling that plaintiff failed to show negligence on the part of defendants.

Plaintiff's evidence tended to show that its truck driver, Charlie Albert Smith, Jr., approached the intersection of Gallimore Dairy Road and Highway 421 at approximately 3:00 p.m. on 14 July 1977. He "pulled up to the railroad crossing and observed both ways up and down the tracks." The railroad tracks toward Greensboro were straight for about one-half mile and level. Smith could not cross the tracks because of traffic on Highway 421, which ran parallel to the tracks. Smith testified

that "[t]he train wasn't in view before I started to go across the tracks and I didn't know it was there until just before I was hit. I did not see the approaching train at all."

Defendants' evidence tended to show that B. G. Chambers, the engineer, believed that the train "came around the curve doing 18 to 20 MPH." Chambers testified that "Train Order 739" had been issued on the day of the collision to reduce the train's speed to 25 m.p.h. However, "[t]he accident occurred within the yard limits of the Guilford College yard." The speed limit therein was 20 m.p.h. Chambers stated that he had set the dynamic brake, a traction motor which slows the train down or maintains a constant speed, to maintain a constant speed of 20 m.p.h. It was his opinion that "the train was running between 20 and 21 MPH prior to the time the collision occurred."

Chambers further testified that the train was 700 or 800 feet away from the crossing when he saw the tractor-trailer move slowly across the tracks. When the train was "possibly 300 or 400 feet from him [plaintiff's tractor-trailer]", he stated, the tractor-trailer stopped. Chambers applied the train's emergency brake anywhere from about 200 to 400 feet from the Gallimore Dairy Road crossing. The front engine eventually stopped about 165 feet west of the crossing after the collision.

Kelly Foster Spainhour, the head end brakeman on defendant railway's train, testified that the train did not exceed 18 m.p.h. as it approached the Gallimore Dairy Road intersection. Regarding the approach of the train to the intersection, Spainhour further testified as follows:

> I saw the tractor and trailer move as I came around the curve. When we came across the Fina crossing the tractor trailer started moving and we were about half way between the Fina crossing and the Gallimore Dairy crossing when the tractor got to 421 and stopped dead. Mr. Chambers put the train in emergency and hollered at me to get off, that he didn't believe the tractor was going to get off the track. I might have said, "I don't believe he is going to move."

The Fina crossing is approximately 1000 feet east of the Gallimore Dairy Road crossing. Spainhour also testified that Chambers was blowing the train's whistle and ringing the bell at the crossings.

Two eyewitnesses, one called by plaintiff and one by defendants, testified that they saw plaintiff's tractor-trailer on the railroad tracks as the train approached the crossing. Plaintiff's witness, Raymond Hoover, testified that the train was approximately 800 feet from the tractor-trailer on the tracks when he saw it; defendants' witness, Eric Weaver, first saw the train about 1100 feet from the tractor-trailer. (These distances are computed from landmarks identified by the witnesses on a wreck site survey offered into evidence by plaintiff.)

[1] This evidence, when viewed in the light most favorable to plaintiff, is sufficient to infer negligent conduct by defendant railway's engineer in failing to observe the plaintiff's tractor-trailer on the railroad tracks at a time sufficient for the engineer to apply successfully the train's emergency brakes. Further, there is evidence that the train was traveling in excess of the speed limit imposed by defendant railway's own safety regulations. *See generally Slade v. Board of Education*, 10 N.C. App. 287, 178 S.E. 2d 316, *cert. denied*, 278 N.C. 104, 179 S.E. 2d 453 (1971). The trial judge erred in refusing to submit the issue of defendants' negligence to the jury.

[2] We now address the trial judge's ruling that plaintiff was contributorily negligent as a matter of law. It is well settled that where opposing inferences are permissible from plaintiff's evidence, a directed verdict on the ground of contributory negligence as a matter of law should be denied. *Bowen v. Gardner*, 275 N.C. 363, 168 S.E. 2d 47 (1969); *Atwood v. Holland*, 267 N.C. 722, 148 S.E. 2d 851 (1966). *See* 9 Strong's N.C. Index 3d Negligence § 35, p. 431, and cases cited therein. The opposing inferences then must be resolved by a jury. *Rappaport v. Days Inn of America, Inc., supra; Clark v. Bodycombe*, 289 N.C. 246, 221 S.E. 2d 506 (1976).

In addition to the above evidence, plaintiff's driver, Charlie Albert Smith, Jr., testified that when he approached the railroad tracks, he saw the traffic on Highway 421 clear to his left. However, two or three cars were coming from the right "pretty close by and so, after [Smith] looked again up and down the tracks to see if they were clear, [he] pulled across the track." There was evidence that shrubbery in the ditch line made it more difficult to see down Highway 421 in a westerly direction than down the

railroad tracks. Smith further testified that he stopped as close as possible to Highway 421. Nevertheless, since the distance between the edges of Highway 421 and the track was less than the length of plaintiff's tractor-trailer, "the rear of [his] equipment fouled the tracks." At this time, Smith had the tractor's overhead air conditioner on "full speed" to cool off the cab. The cab windows were rolled up.

Smith continued to testify as follows:

While I was stopped there at 421 I was watching both lanes of the road and trying my best to get out. Somehow the traffic came jumping up on me from both directions and I had nowhere to go. I hadn't seen anything on the track. Possibly, if I had, I might have pulled out on 421. I was concentrating on the 421 traffic and getting out. I was stopped there for two or maybe three minutes. I remained stopped there because I couldn't get out onto 421. I couldn't make my turn safely to get out. . . .

At the time of the accident I was about to make my move to pull out onto Highway 421. Then I heard a noise and I cut my eye around to the right. I was struck at that moment.

We conclude that a jury may find from this evidence that plaintiff's driver acted in a reasonable manner under the circumstances. Thus, with such inferences existing in opposition to inferences of contributory negligence, a directed verdict for defendants was improper. *Bowen v. Gardner, supra; Atwood v. Holland, supra.*

Since reasonable men may differ in their conclusions based upon the evidence, a jury must answer the issues we have discussed. *See Rappaport v. Days Inn of America, Inc., supra.*

For these reasons, we

Reverse and remand for a new trial.

Judges HEDRICK and WHICHARD concur.