SOUTHERN RAILWAY COMPANY, ERNEST L. WILLIAMS, STEPHEN C. CLOER AND RICHARD D. USSERY v. O'BOYLE TANK LINES, INC.

No. 8317SC326

(Filed 21 August 1984

1. **Railroads § 5— railway employees injured in near-miss—negligence of truck driver—sufficiency of evidence**

   In an action to recover for injuries sustained by railway company employees when they jumped from a moving train because they mistakenly thought that the train was going to collide with a tanker truck owned by defendant and driven by one of defendant's employees, the trial court erred in directing verdict for defendant since the evidence was sufficient to permit a jury to find that defendant's driver was negligent in executing a turn-around of his truck on the train crossing and in failing to move his truck from the crossing until the train was less than 50 feet away.

2. **Evidence §§ 1, 2— regulations of administrative agencies—no proper submission into evidence—no judicial notice**

   The trial court was not required to take judicial notice of administrative regulations promulgated by the N. C. Public Utilities Commission and the U. S. Department of Transportation, since neither of the promulgating agencies was subject to the N. C. Administrative Procedure Act; the court was therefore required to take judicial notice of their regulations only if submitted in accordance with certain procedures designed to insure their accuracy; and there was nothing in the record or the transcript indicating that the regulations in question were properly submitted into evidence.

3. **Assignments § 1; Rules of Civil Procedure § 17— personal injury—rights of injured party not assignable—real party in interest**

   Where employees of plaintiff railway company were injured when they jumped from a moving train because they mistakenly thought that it was go-

1

ing to collide with a truck owned by defendant and driven by one of defendant's employees, plaintiff company compensated its employees for their injuries and related expenses, and plaintiff employees assigned their causes of action to plaintiff company in writing, plaintiff company was not the real party in interest since the purported assignment of plaintiff employees' rights was contrary to public policy and ineffective; however, pursuant to G.S. 1A-1, Rule 17, the trial court could properly direct that the plaintiff employees be made parties to the action "as of the date of filing of the first complaint," thus overcoming defendant's argument that the statute of limitations had run with respect to such plaintiffs.

Judge HEDRICK concurring in part and dissenting in part.

APPEAL by plaintiffs from *Hairston, Judge.* Judgment entered 2 November 1982 in Superior Court, SURRY County. Heard in the Court of Appeals 16 February 1984.

This is a civil action wherein plaintiff Southern Railway seeks damages from defendant for injuries to the individual plaintiffs allegedly resulting from the negligence of one of defendant's employees.

The essential facts are as follows:

The three individual plaintiffs, employees of plaintiff Southern Railway Company (Southern), were injured when they jumped from a moving train. They jumped because they mistakenly thought that the train was going to collide with a petroleum tanker truck that was owned by defendant and driven by one of defendant's employees. There was no collision. This incident occurred in the Surry County town of Pilot Mountain on 5 October 1978. Southern compensated its employees for their injuries and related expenses.

On 1 October 1981, Southern filed a complaint in superior court charging defendant's driver with negligence resulting in the injuries to plaintiffs Cloer and Williams. Alternatively, in the event that Southern was found negligent in the operation of the train, the complaint sought contribution from defendant of one-half of the damages to the injured employees based on defendant's concurring negligence. The damages sought by Southern were based on the amounts it paid to Cloer and Williams as compensation for their injuries and related expenses. On 2 October 1981, Southern filed a complaint in district court based on the injuries sustained by plaintiff Ussery and the compensation paid to

him. The district court action was similar in all essential respects to the action filed the day before in superior court. These complaints were filed five and four days, respectively, before the expiration date of the three year statute of limitations. Prior to the initiation of these actions, the individual plaintiffs had assigned their causes of action to Southern in writing. The assignments were alleged in the complaints.

By consent of the parties on 11 August 1982, the district court action was removed to superior court and consolidated with the actions pending in superior court. The matter came on for a jury trial at the 1 November 1982 session.

At the close of plaintiffs' evidence, defendant moved for a directed verdict pursuant to G.S. 1A-1, Rule 50(a). There were two distinct grounds for the motion which the court considered separately. First, defendant contended that, under North Carolina common law, Southern was not the real party in interest and that the causes of action were not assignable. During argument the court ordered that the individual plaintiffs be made parties to the action under G.S. 1A-1, Rule 17(a), "as of the date of the first complaint." The court then declined to direct the verdict or to dismiss the case on these grounds. The other grounds for defendant's motion were (1) that Southern had failed to show defendant was negligent, and (2) that, even if defendant was negligent, the contributory negligence of Ussery, the engineer on the train, was the sole proximate cause of the injuries.

The court denied the motion. Thereafter, defendant presented no evidence but renewed its motion for a directed verdict on the same grounds asserted earlier. After argument by counsel, the court granted the motion and plaintiffs appealed.

*Bell and White, by W. Thomas White, for plaintiff appellants.*

*Hutchins, Tyndall, Doughton and Moore, by Thomas W. Moore, Jr., for defendant appellee.*

EAGLES, Judge.

I

Plaintiffs assign as error the trial court's grant of defendant's motion for a directed verdict. Plaintiff contends that the motion

was improperly granted because the evidence was legally sufficient to show negligence on the part of defendant and the issue should have been submitted to the jury. We agree that the motion was improperly granted as to the individual plaintiffs.

It is well established that the purpose of a motion for a directed verdict is to test the legal sufficiency of the evidence to support a verdict for the plaintiff and to submit the contested issue to a jury. *E.g., Manganello v. Permastone,* 291 N.C. 666, 231 S.E. 2d 678 (1977); *Wallace v. Evans,* 60 N.C. App. 145, 298 S.E. 2d 193 (1982). Where a motion for directed verdict is made at the close of the evidence, the court must consider the evidence in the light most favorable to the party opposing the motion and give that party the benefit of every reasonable inference. *E.g., Cook v. Export Leaf Tobacco Co.,* 50 N.C. App. 89, 272 S.E. 2d 883 (1980), *rev. denied,* 302 N.C. 396, 279 S.E. 2d 350 (1981). Any contradictions, conflicts or inconsistencies in the evidence must be resolved in favor of the opposing party. *Hart v. Warren,* 46 N.C. App. 672, 266 S.E. 2d 53, *rev. denied,* 301 N.C. 89, --- S.E. 2d --- (1980). The court should deny the motion if there is more than a scintilla of evidence to support the plaintiff's *prima facie* case. *Wallace v. Evans, supra. See generally,* 11 N.C. Index 3d, *Rules of Civil Procedure* § 50 (1978).

Defendant's motion for directed verdict at the close of the evidence was based on the same grounds as its earlier motion at the close of plaintiffs' case. The trial court was not specific in directing the verdict but granted the motion "equally on all basis [sic] enumerated." Those bases included defendant's contention that Southern was not the real party in interest. Since the court had already ordered the addition of the individual plaintiffs as parties to the action, the real party in interest argument was not an appropriate basis for a directed verdict against the individual plaintiffs. The real party in interest issue as it applies to Southern is considered below.

[1] We first address whether the evidence is sufficient to allow a jury to find negligence on the part of defendant and whether that negligence resulted in the injuries to plaintiffs. Only plaintiffs presented evidence. That evidence tends to show the following:

On the morning of 5 October 1978, a train owned by Southern was travelling west through Pilot Mountain on a track also owned

by Southern. The individual plaintiffs were all employed by Southern at the time and all were riding in the engine. Plaintiff Ussery was the engineer operating the train. The weather was clear.

Academy Street is a street in Pilot Mountain that runs north-south through the town. The railroad track runs east to west on a downhill grade of approximately 1.5% (1.5 feet down for every 100 feet of track). Academy Street and the track intersect perpendicularly at a grade crossing. The track approaching the Academy Street crossing from the east, the direction of the train's approach, is straight for approximately two and a half miles and the view of the Academy Street crossing is unobstructed. Approximately four tenths of a mile east of the Academy Street crossing is another crossing.

As the train proceeded through the town, its brake was engaged and it was moving at approximately 20 m.p.h. As the train approached the first crossing, the engineer sounded the horn. Just beyond this crossing, he observed a white object coming across the track from the north at the Academy Street crossing. Between two and three tenths of a mile away, he identified the object as a tanker truck that was backing over the track. He alerted plaintiffs Cloer and Williams, began sounding a "cow call"—a series of short bursts—on the train's horn, and engaged the emergency braking system. The train's bell was ringing and its headlight was on. When it appeared to plaintiff Ussery that the truck would not move off the track and that the train would not stop before reaching the crossing, he jumped from the moving train and directed the other employees to follow. At this point the train was moving at 15 to 17 m.p.h. and was about 150 feet from the crossing. Plaintiffs Cloer and Williams jumped from the train approximately 50 to 100 feet before the crossing. Both of them saw the tanker begin to move as they jumped but it was still on the track. The truck moved off the track and there was no collision. The unmanned train proceeded through the crossing and stopped with its fourth car across the crossing.

John Adams, the driver of defendant's truck, testified for the plaintiffs. On the morning of the accident, he was in the course of delivering gas to Armtex Mills in Pilot Mountain and was travelling east on Pine Street toward Academy Street. Pine Street

parallels the railroad tracks and intersects Academy Street approximately 68 feet north of the railroad crossing. The truck and trailer that Adams was driving was 46 feet long. The rear of the trailer did not extend beyond the rear wheels. The tanker was full of liquefied petroleum gas. The gas was flammable and the tanker was marked with warnings to that effect. In order to make his delivery, Adams was required to turn the truck and trailer around and head west on Pine Street. He executed the turn-around at the intersection of Academy and Pine Streets by turning north on Academy Street, backing south on Academy, across the Pine Street intersection toward the tracks, and turning west onto Pine Street again. Although he heard no whistle, horn, or bell, Adams saw the train's headlight and was aware of its approach. He watched his rearview mirror closely while backing and testified that he did not get close to the track.

After completing his turn-around, Adams proceeded to Armtex Mills to make his delivery. He had parked the truck and was pumping the fuel from it into the Armtex tanks when he was approached by Ussery. Ussery testified that the following exchange took place:

Ussery: "Mr., you almost got some people hurt up here."

Adams: "Yes, I know, I hate it."

At trial, Adams acknowledged that Ussery had spoken to him but denied saying "[Y]es, I know, I hate it." He indicated that he was not aware of the near-accident until Ussery spoke to him. After this initial conversation, Adams and Ussery walked back toward the crossing. Adams pointed out to Ussery and the other Southern employees some tire prints that he claimed were made by his truck. Adams estimated that the tire prints stopped 12 feet short of the tracks.

Our research has disclosed no case on point with the present one—a railroad crossing accident not involving a collision. There are many cases from our state and other jurisdictions where a collision did occur. The duties and responsibilities of the respective parties in those situations are well established and are relevant here.

When approaching a railroad crossing, the motorist and train operator are under a reciprocal duty of exercising due care to avoid a crossing accident. *Johnson v. Southern Ry. Co.*, 255 N.C. 386, 121 S.E. 2d 580 (1961). Though the motorist and the train have equal rights to use a crossing, the motorist must yield the right of way to the train. *Price v. Seaboard Airline Ry. Co.*, 274 N.C. 32, 161 S.E. 2d 590 (1968). When a motorist is aware that he is approaching a crossing, he must exercise due care to protect himself and proceed in such a way that he is able to stop and avoid a collision with an oncoming train. *Id.* A train approaching a crossing is under a duty to warn of its approach by ringing its bell and blowing its horn. *Neal v. Booth*, 287 N.C. 237, 214 S.E. 2d 36 (1975). Where the evidence in a case shows a failure by either party to use due care in such a situation, that negligence may be held to be the sole proximate cause of the accident. *Brown v. Ry. Co. and Phillips v. Ry. Co.*, 276 N.C. 398, 172 S.E. 2d 502 (1970); *Owens v. Norfolk and Western Ry. Co.*, 258 N.C. 92, 128 S.E. 2d 4 (1962). Where the evidence tends to show negligence on the part of both parties, a jury may find contributory negligence on the part of the motorist, *Neal v. Booth, supra; Cooper v. Town of Southern Pines*, 58 N.C. App. 170, 293 S.E. 2d 235 (1982), or that the negligence of both parties concurred to produce the accident. *Brown v. Ry. Co. and Phillips v. Ry. Co., supra.* The doctrine of last clear chance ordinarily operates in such situations to permit a shifting of liability to the train operator when the evidence shows that he had an opportunity, in the exercise of due care, to avoid a collision, but negligently failed to do so. *E.g., Irby v. Southern Ry. Co.*, 246 N.C. 384, 98 S.E. 2d 349 (1957); *Clark v. Ry. Co.*, 109 N.C. 430, 14 S.E. 43 (1891); *Thomas Bros. Oil Co. v. Southern Ry. Co.*, 54 N.C. App. 423, 283 S.E. 2d 794 (1981). However, the doctrine would not apply on these unique facts because (1) there was no collision and (2) the train operator sustained the injury. Rather, assuming sufficient evidence, ordinary contributory negligence could operate as a bar to plaintiffs' recovery here. *See* Prosser, Law of Torts § 66 (1971). *See generally*, 11 N.C. Index 3d, *Railroads*, § 5-7.1 (1978 and Supp. 1983).

With these principles in mind, the evidence is clearly sufficient to permit a jury to find that defendant's driver was negligent. *See Johnson v. Southern Ry. Co., supra.* "Where con-

flicting inferences can be drawn from the evidence, there is no contributory negligence as a matter of law." *Cooper v. Town of Southern Pines, supra* at 175, 293 S.E. 2d at 237. "It is well settled that where opposing inferences are permissible from plaintiff's evidence, a directed verdict on the grounds of contributory negligence as a matter of law should be denied." [Citations omitted.] *Thomas Bros. Oil Co. v. Southern Ry. Co., supra* at 427, 283 S.E. 2d at 796. In our opinion, the evidence in this case permits several interpretations while compelling none. A jury question was therefore presented and a directed verdict was improper.

[2]   Plaintiffs next contend that the trial court erred in refusing to take judicial notice of two administrative regulations: one promulgated by the North Carolina Public Utilities Commission and the other by the United States Department of Transportation. A court must take judicial notice of important administrative regulations having the force of law. *Mann v. Henderson,* 261 N.C. 338, 134 S.E. 2d 626 (1964). However, neither of the promulgating agencies here is subject to the North Carolina Administrative Procedure Act. G.S. 150A-1, 150A-64. The court is therefore only required to take judicial notice of their regulations if submitted in accordance with certain procedures designed to insure their accuracy. G.S. 8-1 *et seq. See generally,* Brandis, N.C. Evidence §§ 11-12 (1982). Here, plaintiffs have shown us nothing in the record or the transcript indicating that the administrative regulations in question were properly submitted into evidence. The court was not required to take judicial notice of them and plaintiffs' assignment of error is without merit.

## II

[3]   By its cross-assignment of error, defendant contends that the trial court erred in refusing to direct the verdict for defendant and dismiss the case on the grounds that Southern was not the real party in interest. Defendant argues that the claims of the individual plaintiffs were not assignable and that, since they were not parties to the action, the action as filed should have been dismissed. While we agree that the purported assignment was contrary to public policy and ineffective, we do not agree that a directed verdict against the individual plaintiffs was appropriate.

G.S. 1A-1, Rule 17, provides, in pertinent part:

Every claim shall be prosecuted in the name of the real party in interest; . . . . No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

Accordingly, upon objection by the defendant, the trial court directed that Williams, Ussery and Cloer be made parties to the action "as of the date of filing of the first complaint." All three of them indicated in writing that they agreed to be made parties, that they ratified and adopted the proceedings up to that point and that they agreed to be bound by the judgment in the case. Rule 17 provides that the date of such a joinder or ratification by the real party in interest relates back to the date the action was commenced, thus overcoming defendant's argument that the statute of limitations had run with respect to plaintiffs. *See Booker v. Everhart*, 294 N.C. 146, 240 S.E. 2d 360 (1978). Defendant's cross-assignment of error as to the individual plaintiffs is without merit.

While we hold that it was error for the trial court to grant defendant's motion for a directed verdict as to the individual plaintiffs, our view is different with respect to Southern Railway. Because the purported assignment of rights to Southern was ineffective under common law as contrary to public policy, 6 Am. Jur. 2d, Assignments, § 37, Annot., 40 A.L.R. 2d 500, and not within any statutory exception to the common law rule, G.S. 4-1; G.S. 1-57, Southern was not the real party in interest and defendant's motion for directed verdict was properly allowed against plaintiff Southern Railway. *Reliance Ins. Co. v. Walker*, 33 N.C. App. 15, 234 S.E. 2d 206, *rev. denied*, 293 N.C. 159, 236 S.E. 2d 704 (1977).

As to the individual plaintiffs, we reverse the trial court and remand the cause for a new trial.

As to the corporate plaintiff, Southern Railway Company, we affirm entry of the directed verdict for defendants.

Affirmed in part; reversed and remanded in part.

Judge HILL concurs.

Judge HEDRICK concurs in the result in part and dissents in part.

Judge HEDRICK concurring in part and dissenting in part.

I concur in the result of that part of the majority decision that affirms the judgment directing a verdict for the defendant with respect to the claim of plaintiff, Southern Railway. I dissent, however, from that part of the decision that reverses the judgment directing a verdict for the defendant with respect to the cases of the additional plaintiffs, Williams, Cloer, and Ussery. In my opinion, where the additional plaintiffs have assigned their claims to their employer, and the majority has declared the original plaintiff, employer, not to be a real party in interest, and where the record affirmatively discloses that these employees, additional plaintiffs, have been paid by their employer for the precise claims that they undertook to assign and for which they now seek to recover from the defendant, the trial court correctly directed a verdict for the defendant.